**RUDY, Appellant,**

v.

**LORAL DEFENSE SYSTEMS, Appellee.**

[Cite as *Rudy v. Loral Defense Sys.* (1993), 85 Ohio App.3d 148.]

Court of Appeals of Ohio,
Summit County.

No. 15701.

Decided Jan. 20, 1993.

*William Holland* and *Dennis Thompson,* for appellant.

*Edward Kaminski* and *Vincent Tersigni,* for appellee.

REECE, Judge.

Plaintiff-appellant, Larry Rudy, claims that he was wrongfully discharged from his position with the defendant-appellee, Loral Defense Systems ("Loral"). He appeals the trial court's decision granting summary judgment in Loral's favor. We affirm.

In 1982, Rudy began work as a plant engineer for Goodyear Aerospace Corporation, Loral's predecessor in interest. When Loral bought Aerospace in 1987, it began to reduce the work force at Rudy's plant. Rudy was placed on recallable, layoff status. Loral asserts that Rudy's recall rights consisted of placing him on recallable, layoff status for four years, with seniority continuing for the first two years in the event Rudy was recalled. In his brief, Rudy alleges that his promise of recall was more definite.

Loral maintained a computerized system of matching personnel with staffing needs, which was known as the "Skills Bank." Rudy had completed a profile for the computer system while Goodyear operated the plant. He also completed questionnaires for the program mailed to him after he was laid off. In addition, in an attempt to be recalled, he responded to several ads Loral placed in local newspapers. However, Rudy was not recalled and his layoff status terminated on June 20, 1991.

Rudy filed a claim of age discrimination with the Ohio Civil Rights Commission on April 14, 1988. Approximately a year later, he filed suit in the Summit County Common Pleas Court alleging age discrimination and breach of contractual and quasi-contractual obligations. After the action was removed to federal court, the district court granted Loral's motion for summary judgment on the alleged age discrimination claim and dismissed without prejudice the contractual issues. Rudy refiled these actions with the trial court and added a claim of retaliatory termination. The trial court granted summary judgment for Loral. Rudy appeals, alleging three assignments of error concerning the propriety of granting summary judgment.

The standard of review for an appeal of a decision granting summary judgment is well established. Pursuant to Civ.R. 56(C), summary judgment is proper if the trial court determines that:

"(1) No genuine issue as to any material fact remains to be litigated;

"(2) the moving party is entitled to judgment as a matter of law; and

"(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 273; see, also, *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976.

Once summary judgment is requested, the responding party must set forth specific facts demonstrating triable issues on all essential matters for which he bears the initial burden of proof. Mere reliance upon the pleadings is insufficient. Civ.R. 56(E); see, also, *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 274. The issue to be tried must also be genuine, allowing reasonable minds to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–253, 106 S.Ct. 2505, 2509–2513, 91 L.Ed.2d 202, 211–214. The existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to survive a motion for summary judgment. *Id.* Further, a plaintiff may not rest upon mere allegations, but must set forth specific facts which show there is as an issue for trial. Civ.R. 56(E); *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.

## Assignment of Error 1

"The trial court erred in granting defendant-appellee's motion for summary judgment on the issue of unilateral contract or implied contract in that there exist several genuine issues of material fact which must be decided by the trier of the fact[s], which therefore makes granting a summary judgment in this case improper."

Rudy makes two implied-contract claims: first, that promises made in company manuals gave rise to an implied contract and, second, that he was guaranteed recall by Loral.

The Ohio Supreme Court has held that in the area of employment contracts, there exists "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 255, 74 O.O.2d 415, 418, 344 N.E.2d 118, 122. See, also, *Mers v.*

*Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 102–103, 19 OBR 261, 262–264, 483 N.E.2d 150, 152–154, and fn. 1.

However, the court in *Mers* recognized that the cumulative effect of various events may transform an employment-at-will agreement into an implied contract for a definite term. *Mers,* at paragraph two of the syllabus, states:

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge."

The court has warned, however, that a strong presumption exists against such arrangements. *Henkel,* 45 Ohio St.2d at 255–257, 74 O.O.2d at 418–420, 344 N.E.2d at 121–123; *Mers,* 19 Ohio St.3d at 102, 19 OBR at 262, 483 N.E.2d at 153, fn. 1.

■ The legal effects of an implied contract and an express contract are identical, the only distinction being the manner in which mutual assent is manifested. 1 Williston on Contracts (4 Ed.1990) 18–25, Section 1–5. See, also, *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney* (1901), 65 Ohio St. 104, 61 N.E. 152, paragraph one of the syllabus. However, in an implied contract all of the essential elements of a contract must be proved.

■ Rudy argues that he has an implied contract with Loral based on Goodyear's employee manuals and his participation in the Skills Bank computer program. As we have stated, "employee manuals and handbooks are usually insufficient, by themselves, to create a contractual obligation." *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 671, 591 N.E.2d 752, 757; *Gargasz v. Nordson Corp.* (1991), 68 Ohio App.3d 149, 155, 587 N.E.2d 475, 478. Rudy points to no specific promises, and we can find none, in the employee manuals that evidence an implied contract for a definite term. Further, his participation in the "Skills Bank" did not give rise to an implied contract. That program's stated purpose was to search for company employees who may be qualified for a vacant position. The "Skills Bank" manual itself states that it is an "advisory tool for managers to consider and [has] never been intended to be a binding contract." The trial court correctly found that there was no implied contract for a definite term of employment between Rudy and Loral.

■ Rudy also claims that an implied contract existed that he would be recalled from layoff status. He bases this claim on alleged representations made by Loral, the "Skills Bank" program, advertisements for job openings by Loral in local newspapers, and industry custom. In deposition, Rudy claimed only that he was promised that he would be on recall status for four years, and during the

first two years seniority would continue if he was recalled. In an affidavit filed with the trial court, Rudy reiterated this claim. These representations do not give rise to an implied contract to recall Rudy. He does not offer any evidence that he was guaranteed recall; Loral's only representation was that he would be considered if an opening arose.

Further, there is no evidence that an opening arose for which Rudy was qualified. Two plant engineer vacancies arose during Rudy's layoff; the first was a plant engineer senior position, a higher level than that previously held by Rudy; the second was a plant engineer position requiring certification and experience in heating, ventilation and air conditioning, which Rudy did not possess. The first position was filled by an engineer who possessed twenty-five years more seniority than Rudy. Although Rudy did apply for other job openings advertised by Loral, he has not adduced any evidence showing that he was qualified for those positions, that the positions were filled, or that those positions were staffed by less qualified applicants.

Rudy also claims a unilateral contract existed between himself and Loral. A unilateral contract contemplates an offer which is accepted by the performance of the offered terms and conditions, rather than by a return promise. *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1, 11, 15 OBR 22, 32, 472 N.E.2d 765, 775. Loral made no offer of continued employment or promise to recall Rudy which he could accept by performance. The doctrine of unilateral contracts is not applicable in this case. Rudy's first assignment of error is overruled.

## Assignment of Error 2

"The trial court erred in granting defendant-appellee's motion for summary judgment on the issue of quasi-contract and/or promissory estoppel in that there exist several genuine issues of material fact which must be decided by the trier of the fact[s], which therefore makes granting summary judgment in this case improper."

In *Mers,* paragraph three of the syllabus, the Ohio Supreme Court also recognized promissory estoppel as an exception to employment-at-will contracts:

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."

However, the promises alleged must be "clear and unambiguous" in their terms. *Cohen & Co. v. Messina* (1985), 24 Ohio App.3d 22, 26, 24 OBR 44, 48, 492 N.E.2d 867, 872.

■ This court has held that "clear and unambiguous promises" must be specific promises of job security. *Tarantine v. Loral Corp.* (Oct. 24, 1990), Summit App. No. 14600, unreported, at 9, 1990 WL 163877; see *Modarelli v. First Fed. S. & L. Assn. of Wooster* (June 6, 1990), Wayne App. No. 2529, unreported, at 8–9, 1990 WL 77124. The only promises made Rudy were that he would be on recallable layoff status and that he would be able to count up to two years of seniority for his layoff period if he was recalled. This is not a promise upon which Rudy could reasonably rely that he would be recalled. Rudy was only promised that he could be recalled, not guaranteed that he would.

"A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph two of the syllabus. Rudy has shown no specific promise of continued employment, only claims of future benefits in the event he was recalled. The second assignment of error is not well taken.

Assignment of Error 3

"The trial court erred in granting defendant-appellee's motion for summary judgment on the issue of retaliatory actions in violation of the Ohio Civil Rights Act, and specifically Ohio Revised Code Section 4112.02(I) and (J), by the defendant-appelle [*sic* ] in that there exist several genuine issues of material fact which must be decided by the trier of the fact[s], which therefore makes granting summary judgment in this case improper."

Rudy bases his retaliatory motive claim on R.C. 4112.02(I) and (J), which provide that it is unlawful:

"(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful practice defined in this section, or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

"(J) For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with sections 4112.01 to 4112.11 of the Revised Code, or any order issued thereunder, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."

Rudy brought suit on April 12, 1988 against Loral for age discrimination. He claims Loral failed to recall him from layoff in retaliation for this suit.

In order to prove a retaliatory discrimination claim, a plaintiff must prove by a preponderance of the evidence that:

1. he was a member of a protected class or he engaged in a protected labor activity under Ohio or federal law;

2. plaintiff's protected status or his engagement in protected activities was known to the defendant;

3. defendant took an employment action adverse to plaintiff and the stated reasons for that action were not the true retaliatory reason; and

4. there was a casual connection between the protected activity and the adverse employment action. *Canitia v. Yellow Freight Sys., Inc.* (C.A.6, 1990), 903 F.2d 1064, 1066; *Mead Corp. v. Ohio Civ. Rights Comm.* (June 30, 1986), Fayette App. No. CA85-11-015, unreported, 1986 WL 7389.

In order to rebut a prima facie case of retaliatory discrimination, an employer must show merely some "legitimate, nondiscriminatory reason" for its action. *Canitia, supra,* at 1066; *Mead, supra,* at 5; and *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 678.

In the case at bar, Rudy has not produced any evidence showing that his failure to be recalled was the result of a retaliatory reason or that there is a connection between his not being recalled and his age discrimination claim. Further, Rudy has not produced any evidence showing that a representative of Loral informed him he was not being recalled or interviewed for recall based on his age discrimination suit. Without some express discrimination, he can only make out his prima facie case by showing that the people who filled positions for which he was qualified were less qualified than himself or that Loral violated some promise to take employment action in Rudy's favor. As we have stated, the two plant engineering positions for which Rudy applied were filled by more qualified candidates and the company made no promise to recall Rudy. Rudy cannot meet the third or fourth prong of the retaliatory discrimination test. His third assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and CACIOPPO, J., concur.