DECISION AND JOURNAL ENTRY
Plaintiff-Appellant, Carole Klinar (Klinar), has appealed from a judgment of the Lorain County Common Pleas Court that granted summary judgment to Defendant-Appellees, W.W. Extended Care, Villa Nursing, Inc., and WLW, Inc. (OECC). This Court affirms.
 I.
W.W. Extended Care is the operating entity of the long term care facility in Lorain, Ohio known as Ohio Extended Care. Villa Nursing, Inc. is the operating entity of a separate long term facility in Cleveland, Ohio known as Villa Care Center. WLW, Inc., dba Care Services, Inc. provides management support services to both Ohio Extended Care and Villa Care Center.
Klinar first began working with OECC as a registered nurse in 1989. Shortly thereafter, Klinar accepted a supervisory position over the employees on the night shift. On December 6, 1993, Klinar transferred to full-time day position as nurse aide instructor.
During September or October of 1994, all OECC employees were told at a staff meeting that layoffs may be necessary due to overstaffing and budget constraints. During the week of November 4, 1994, Ms. Deegan (Deegan), the Acting Director of Nursing, informed Klinar that nurse aide classes would be discontinued for a couple of months. Deegan told Klinar that she could: (1) bump less senior registered nurses and return to the night shift, (2) go to an on-call status to work any shift as needed, or (3) take a voluntary layoff with recall in one to two months. Kinar accepted the voluntary layoff that same day. On November 22, 1994, her last day of employment, Klinar met with OECC's Administrator, Mr. Leary (Leary). Leary typed a layoff notice which indicated that Klinar had a supervisory position, that the reason for the layoff was from overstaffing, and that OECC estimated her return during January of 1995.
After her layoff, Klinar immediately applied for unemployment compensation benefits. In addition, Klinar filled out employment applications at other healthcare facilities in northeastern Ohio twice a week. On December 1, 1994, OECC's new Director of Nursing, Ms. Bailey (Bailey), offered Klinar a part-time supervisor position on the night shift. After some consideration, Klinar declined the opportunity and stated that she should be called back to the same job that she left.
On January 20, 1995, Ms. Meno, a supervisor on the afternoon shift, contacted Klinar to see if she wanted to be put back on the schedule for the afternoon shift. Again, Klinar refused the offer and asked Ms. Meno to tell Bailey to call her. After waiting for Bailey to call, Klinar scheduled a meeting with Bailey on April 3, 1995. During this meeting, Bailey offered Klinar a part-time position as a nursing team leader on the afternoon shift. Klinar refused this position and told Bailey that she wanted a full-time position as a nurse aide instructor on day shift. Klinar also asked Bailey a series of questions concerning why she had not been recalled to such position. Although Bailey did not respond to her questions, she informed Klinar that the nurse aide training classes had resumed and that Ms. Sheridan was teaching the classes.
On April 5, 1995, Bailey called Klinar to ask her if she wanted to reconsider the offer for the team leader position. Bailey informed Klinar that this was the only supervisory position open and that there was no full-time nurse aide instructor position available at the present time. Again, Klinar rejected Bailey's offer. Klinar also scheduled another appointment with Bailey and informed her that she would be bringing an attorney. On April 6, 1995, Ms. Hicks, a staffing coordinator for OECC, contacted Klinar to offer her the exact supervisory position she had in December 1993 before she transferred to the nurse aide instructor position. After considering the offer for twenty-four hours, Klinar declined the position.
On April 15, 1995, Klinar, her attorney, Bailey, and Ms. Sheridan met to discuss Klinar's status with OECC. At the meeting, Klinar repeated her questions and was referred to OECC's general counsel. There was no other communication regarding Klinar's recall after this meeting.
On April 7, 1997, Klinar filed a complaint in the Lorain County Common Pleas Court against OECC, alleging breach of express contract, promissory estoppel, fraud, wrongful discharge in violation of public policy and age discrimination as a result of her voluntary layoff with OECC. On July 15, 1998, OECC moved for summary judgment, which the trial court ultimately granted.[1]
Klinar timely appealed, asserting four assignments of error.
 II. ASSIGNMENT OF ERROR NUMBER ONE The trial court erred by granting [OECC's]motion for summary judgment on [Klinar's] promissory estoppel claim because [Klinar] established issues of material fact concerning [OECC's] promise to return her from layoff as nurse aide instructor.
 ASSIGNMENT OF ERROR NUMBER TWO The trial court erred by granting [OECC's] motion for summary judgment when [Klinar] established issues of material fact demonstrating that [OECC] created and breached a contract for [Klinar's] return as nurse aide instructor.
 ASSIGNMENT OF ERROR NUMBER THREE The trial court erred by granting [OECC's] motion for summary judgment because [Klinar] established issues of material fact concerning [OECC's] fraudulent non-disclosure of the risk that [Klinar] might not be recalled to her previous position.
 ASSIGNMENT OF ERROR NUMBER FOUR
 The trial court erred by granting [OECC's] motion for summary judgment because [Klinar] met her legal obligation to mitigate damages, and therefore [OECC is] not entitled to summary judgment precluding damages accruing after April 6, 1995.
 In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. In Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, the Ohio Supreme Court outlined the respective burdens upon the moving and nonmoving parties in the context of a motion for summary judgment pursuant to Civ.R. 56:
 [W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
 (Emphasis sic.) These principles were reaffirmed in Vahila v. Hall (1997), 77 Ohio St.3d 421, 429.
Thus, unless the movant fulfills both prongs of the Dresher
duty, the motion for summary judgment must be denied. The moving party is required to state the basis for his motion and then point to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any," that support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy that obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant [are] no longer good enough in Ohio." Am.Express Travel Related Serv. Co., Inc. v. Mandilakis (1996),111 Ohio App.3d 160, 164.
However, once the movant satisfies his burden, the nonmovant must then present or point out evidence that satisfies his reciprocal burden to demonstrate the existence of a material factual dispute. Pursuant to Civ.R. 56(E), a nonmovant "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the nonmovant fails to satisfy his reciprocal burden, summary judgment, if appropriate, should be granted. Civ.R. 56(E). This Court will analyze both parties' arguments and the evidence presented in support of those arguments to establish whether the respective burdens have been met.
 A.
Ohio courts have recognized a strong presumption in favor of employment-at-will in the absence of an expression of the parties' intent to be bound. Henkel v. Educational Research Council
(1976), 45 Ohio St.2d 249, 255, quoting Forrer v. Sears, Roebuck Co. (1967), 36 Wis.2d 388, 393, 153 N.W.2d 587. "Either party to an at-will employment agreement may terminate the relationship at any time." Harold v. Bridgestone/Firestone, Inc. (Sept, 16, 1998), Summit App. No. 18915, unreported, at 15. "Underlying this presumption is the policy that parties to an employment contract should be free to design their relationship in the way they choose." Id. An employer can alter the at-will relationship through the doctrine of promissory estoppel, or by creating an expressed or implied contract. Peters v. Mansfield Screw MachineProducts Co. (1991), 73 Ohio App.3d 197, 200. Because Klinar has asserted both the doctrine of promissory estoppel and an expressed contract, this Court will address them separately.
1. Promissory Estoppel Claim
In order to avoid injustice, the doctrine of promissory estoppel will be applied in an employment-at-will agreement. SeeGargasz v. Nordson Corp. (1991), 68 Ohio App.3d 149, 153. The test in these cases is whether (1) there were representations made by the employer, (2) which the employer should have reasonably expected to induce reliance in the employee, and (3) the employee actually relied on the representations (4) to his or her detriment. See id. The party seeking a claim of promissory estoppel must demonstrate that the promise was a clear, unambiguous, and specific promise of job security. Rudy v. LoralDefense Sys. (1993), 85 Ohio App.3d 148, 154.
In support of its motion for summary judgment, OECC pointed to Klinar's layoff notice which stated that the reason for her layoff was the overstaffing of nurses with an estimated return in January of 1995. OECC pointed to Klinar's own deposition in which she admitted that there was no discussion about which position would be available on her recall from layoff.[2] It further pointed to the deposition of its Acting Director, Deegan, who stated that she did not make any representations to Klinar. Deegan testified that a full-time nurse aide instructor position has not existed at OECC at any time since she left the position in November of 1994. Deegan added that the nurse aide classes were restructured so that the staff development coordinator organized the classes along with her other duties. Bailey, the new Director of Nursing, also stated that she had informed Klinar that there was no longer a full-time position of nurse aide instructor available and offered her other supervisory positions for which she qualified. Lastly, OECC argued that even if the reliance was reasonable, there was no detrimental reliance because Klinar stated in her deposition that she "would have accepted a position elsewhere but only after checking on [her] job status at [OECC]".
On the other hand, Klinar argued that because OECC did not discuss which position she would return to, it was clear and unambiguous that neither party considered it an issue. In support of her argument that OECC made a clear and unambiguous promise, Klinar further pointed to Deegan's deposition in which she stated that it would be reasonable for Klinar to expect to be recalled to the nurse aide instructor position "if she had not been told no differently." Klinar also stated that when she stopped in to pick up her layoff notice, OECC's administrator, Leary, asked her if she would return when they called her. Finally, Klinar argued that she suffered a detriment when she rejected the other positions at OECC because she relied on the nursing aide instructor position.
In reviewing the entire record, this Court concludes that OECC made no specific promise as to what position would be available when Klinar was recalled. Although it is clear that Klinar would be recalled, it is not reasonable that she would rely upon the continued position of nurse aide instructor. The evidence indicates that such position was no longer available and that Klinar was offered other positions for which she qualified. As such, this Court concludes that Klinar did not suffer any detrimental reliance. Klinar made a conscious, well-informed, uncoerced decision when she turned down the positions from OECC. Consequently, turning down OECC's positions do not present a jury question of detrimental reliance. Accordingly, the trial court properly granted summary judgment to OECC on Klinar's promissory estoppel claim. Klinar's first assignment of error is overruled.
2. Express Contract Claim
Although an employment agreement may appear to be at-will, the trier of fact should examine the history of the employer-employee relationship and the facts and circumstances surrounding the employment to determine the explicit and implicit terms in their agreement regarding discharge. Wright v. Honda ofAm. Mfg., Inc. (1995), 73 Ohio St.3d 571, 574. The facts and circumstances which may be considered include the character of the employment, the course of dealing between the parties, written assurances reflecting company policy, information contained in employment handbooks, and oral representations made by supervisory personnel regarding job security and good performance. (Citations omitted). See id. at 574-75. A contract exists if, from these facts and circumstances, it appears that there was in fact an offer, acceptance, and consideration. Tersigni v. Gen. Tire, Inc.
(1993), 91 Ohio App.3d 757, 760. This Court has previously observed that "seldom will an employee, failing to establish promissory estoppel to alter an employment-at-will agreement, be able to establish an employment contract based on the same set of facts." Gargasz, 68 Ohio App.3d at 155. Furthermore, the party seeking to establish a contract has the heavy burden of proving the existence of each element necessary to the formation of a contract. Id. at 154.
In support of summary judgment, OECC again pointed to Klinar's layoff notice and argued that it did not breach any contract because it had only promised to recall her in one to two months. It further pointed out that Klinar admitted that she was offered supervisory positions at OECC within the time period. To rebut OECC's argument, Klinar relied on the same evidence she used to support her claim for promissory estoppel and argued that an express contract existed to return her as a nurse aide instructor.
In construing all the facts presented, and all such facts being construed most strongly in favor of the non-moving party, this Court believes that reasonable minds could not differ concerning whether an expressed contract existed between OECC and Klinar. There is no genuine issue of material fact because the facts do not demonstrate mutual assent by the parties to recall Klinar solely as a nurse aide instructor. Therefore, OECC was entitled to summary judgment as a matter of law. Klinar's second assignment of error is overruled.
 B. Fraud Claim
The Ohio Supreme Court has defined fraud as:
 (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.
 Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475. In order to establish a claim of fraud, it is necessary for the party to prove all of the above elements.
In support of its motion for summary judgment, OECC pointed to Klinar's deposition in which she admitted that there was no discussion regarding which position would be available upon her recall. It also pointed to the affidavit of Ms. Deegan which stated that at the time she discussed the layoff with Klinar, she had not anticipated that OECC would abolish the nurse aide instructor position. Bailey, the new Director of Nursing, also testified that she had informed Klinar that there was no longer a full-time position of nurse aide instructor available and offered her other supervisory positions for which she qualified. Again, Klinar relied on the same evidence she used to support her claim for promissory estoppel to rebut OECC's argument. She has not come forward with any evidence to prove that OECC represented or attempted to conceal the fact that the nurse aide instructor position would or would not be available when Klinar was recalled.
While construing these affidavits most strongly in Klinar's favor, this Court finds that there is no evidence that would justify a finding that OECC misrepresented a material fact concerning Klinar's layoff. The record is devoid of any specific facts showing that OECC knowingly made false representations with the intent to mislead Klinar or concealed any facts concerning the nurse aide instructor position. Therefore, the trial court was correct in granting summary judgment in OECC's favor on Klinar's claim of fraud. Klinar's third assignment of error is overruled.
 D. Mitigation of Damages
Pursuant to App.R. 12(A)(1)(c), this court's disposition of the first, second and third assignments of error renders Klinar's fourth assignment of error moot and accordingly, it will not be addressed.
 III.
Klinar's first, second and third assignments of error are overruled and her fourth assignment of error is moot. The judgment of the trial court granting summary judgment in favor of OECC is affirmed.
 ________________________ BETH WHITMORE FOR THE COURT
BAIRD, P.J., SLABY, J., CONCUR.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
[1] This Court notes that prior to OECC's motion for summary judgment, Klinar dismissed her age discrimination and public policy tort claims.
[2] Klinar has conceded in her brief that the parties never discussed the position to which she would return from her layoff.