JOURNAL ENTRY AND OPINION
In this action for wrongful discharge, appellant Vernadette Evans appeals from a decision of the trial court that granted appellee Medical Mutual of Ohio's motion for summary judgment on appellant's claim for breach of an implied employment contract. After careful review, we conclude that there was no genuine issue as to any material fact and Medical Mutual was entitled to judgment as a matter of law on appellant's claims. Accordingly, we affirm the trial court's decision.
Appellant was hired as a Claims Processor at Medical Mutual, then known as Blue Cross Blue Shield of Northern Ohio, on December 15, 1986. Prior to her hire, she filled out a job application which contained the following disclaimer:
 In consideration of my employment, I agree to conform to rules and regulations of Blue Cross Blue Shield of Northern Ohio, and I agree my employment and compensation can be terminated with or without cause and with or without notice, at any time, at the option of either the Company or myself. I understand that no supervisor or managerial employee of Blue Cross Blue Shield of Northern Ohio, other than the Vice-President of Human Resources or the President of the Company has any authority to enter into any agreement for employment for any specified period of time, or make any agreement contrary to the foregoing.
Shortly after appellant was hired, she attended an orientation with approximately twenty other people. Appellant claims that at this orientation, Debra Green, an employee in Medical Mutual's Human Resources Department, who was neither the Vice-President of Human Resources nor the President of the Company, stated that just cause was needed for termination.
Later that day, appellant received an Employee Handbook outlining the policies of the Company. The first page of the handbook contained the following statement:
 This handbook the policies contained herein do not in any way constitute, and should not be construed as a contract, express or implied, or employment between the employer and the employee or a promise of employment. This handbook is merely a guideline of policies and should not be relied upon as a definite statement of the policies. The Company, at its option, may change, delete, suspend or discontinue any part or parts of the policies in the handbook at any time without prior notice. Any such action shall apply to existing, as well as future, employees. In addition, the Company retains its right to interpret and apply its policies as it in its sole discretion sees fit. Employment with the Company remains on an at-will basis which means either you or the Company may end the employment relationship with or without reason and with or without notice.
The handbook further restates the employment-at-will relationship at page 22:
EMPLOYMENT-AT-WILL
 Our employment relationship is one of employment at will, which means that either you or the Company may terminate your employment at any time, for any reason or no reason.
The handbook also provides the Company with the exclusive right to make employment decisions, including the discharge of employees. Specifically, at page 17 of the handbook, the following is stated:
 The corrective actions described above are only guidelines and do not constitute a legal contract between the Company and its employees. The Company reserves the right to set the corrective action which it, in its sole discretion, believes to be in the best interest of the Company.
Finally, the last page of the handbook requires the signature of the employee and states the following:
 I have received and retained a copy of the Blue Cross Blue Shield of Ohio Employee Handbook. The handbook contains policies, practices and regulations, which I have read, understand and agree to comply with during my employment with the Company.
 I understand this handbook and the policies contained within do not in any way imply any type of employment contract. I further understand that my employment is at-will, which means that either the Company or I have the right to terminate my employment at any time for any reason.
 I further understand that the Company retains the right to modify, amend or supplement any of the policies contained in the Employee Handbook and that the Company's interpretation of its policies are final.
On April 10, 1995, appellant was injured at work and went on medical disability leave beginning April 11, 1995. On May 23, 1995, appellant was placed on temporary total disability by the Bureau of Workers' Compensation with instructions that she could not return to work until November 8, 1995. However, appellant did not return to work on that date. Indeed, she later testified that she was unable to return to work for one year after her injury. (Depo. Tr. 38).
On November 13, 1995, 216 days after she went on medical leave, appellant was notified by Debra Green that she was being terminated from her position with the Company for exceeding the maximum number of days an employee can remain absent due to medical disability. The relevant policy, found at page 13 of the handbook, provides in pertinent part:
 If you have been on Medical Disability for 90 calendar days, your position may be filled.
 If your disability lasts for more than 90 days but less than 180 days, we will attempt to place you in an equivalent post with equivalent benefits, pending other terms and conditions of employment when you are ready to return to work.
The November 13, 1995 letter also advised appellant that she was eligible for re-employment with the Company; however, appellant never reapplied for employment.
Shortly after receiving her termination letter, appellant alleges that she telephoned Jack Burry, the President of the Company, to inquire about her termination. Appellant claims that Mr. Burry told her that certain procedures should have been followed prior to her termination.
On December 4, 1998, appellant filed her complaint in the trial court alleging she had an implied employment contract with Medical Mutual that she would not be terminated without just cause.
On April 23, 1999, Medical Mutual filed a motion for summary judgment which was granted by the trial court on September 15, 1999.
This appeal followed with appellant claiming as error:
 I. ORAL REPRESENTATIONS OF EMPLOYMENT TERMS MADE BY THE EMPLOYER TO THE EMPLOYEE CAN CONSTITUTE AN IMPLIED EMPLOYMENT CONTRACT
 A. AN EMPLOYEE HANDBOOK OUTLINING COMPANY POLICIES AND PROCEDURES CAN CONSTITUTE AN IMPLIED EMPLOYMENT CONTRACT.
 II. INCONSISTENT TREATMENT OF EMPLOYEES CAN LIMIT THE EMPLOYER'S ABILITY TO TERMINATE THE AT-WILL EMPLOYMENT RELATIONSHIP.
 III. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST.
Appellant claims that the trial court erred in granting summary judgment in favor of Medical Mutual because genuine issues of material fact existed with regard to whether the employee manual, along with oral representations made to her, rose to the level of an implied contract of employment. Medical Mutual maintains that summary judgment in its favor was appropriate on the basis that there was no evidence to establish the elements of appellant's claim that an implied contract of continued employment existed between the parties. The issue here is whether the trial court properly granted Medical Mutual's motion for summary judgment.
We begin by noting that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co.(1996),77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378; citing Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in Medical Mutual's favor was appropriate.
Ohio recognizes the doctrine of employment-at-will whereby an employment agreement of indefinite duration is presumed to be terminable at will by either party for any reason not contrary to law. Wright v. Honda of America (1995), 73 Ohio St.3d 571, 574; Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 103. However, the terms of discharge may be altered when the conduct of the parties indicates a clear intent to impose different conditions regarding discharge. Condon v. Body, Vickers Daniels (1994), 99 Ohio App.3d 12, 18; Healey v. Republic Powdered Metals, Inc. (1992), 85 Ohio App.3d 281, 284; Rudy v. Loral Defense Sys. (1993), 85 Ohio App.3d 148, 151. Specifically, Ohio courts have recognized that in certain contexts, evidence of customs, company policies, employee handbooks, and oral representations may be used to establish the existence of an implied employment contract or an implied term of that contract. Mers, paragraph two of the syllabus.
Here, appellant did not have a written employment contract with Medical Mutual. Accordingly, there is a presumption that appellant and Medical Mutual entered into an employment agreement which was terminable at the will of either of the parties. Ibid. Thus, the trial court's judgment should be affirmed unless we determine, after a review of the facts in a light most favorable to appellant, that reasonable minds could reach differing conclusions with regard to implied additional terms or circumstances which overcome this presumption. Gargasz v. Nordson Corp. (1991), 68 Ohio App.3d 149, 152.
Appellant first contends that her termination from Medical Mutual was wrongful based upon policies found in the employee handbook that altered her employment-at-will status. Employee manuals and handbooks are usually insufficient, by themselves, to create a contractual obligation. Rudy v. Loral Defense Sys., supra, at 152; Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 671; Gargasz, supra, at 155. In order to find that the parties intended to impose contractual conditions on the terms of discharge, we must first look at the language used in the employee handbook to see how it deals with the termination of employees on disability leave. Appellant relies on the following passage in the handbook to support her claim that Medical Mutual was required to follow a specific procedure prior to terminating her:
 If you have been on Medical Disability for 90 calendar days, your position may be filled.
 If your disability lasts for more than 90 days but less than 180 days, we will attempt to place you in an equivalent post with equivalent benefits, pending other terms and conditions of employment when you are ready to return to work.
Despite the fact that the handbook, through this passage, does appear to provide a policy for placing formerly disabled employees in equivalent positions within the Company, the passage only applies to employees who have been absent for more than 90 days but less than 180 days. Here, appellant was absent from work for 216 days when she was terminated by the Company. Accordingly, pursuant to the very terms of the passage on which appellant relies, Medical Mutual was not required to place her in an equivalent position within the Company.
Moreover, the passage does not contain any statement that Medical Mutual intends to be bound by a specific termination procedure or that any employee has job security. Indeed, the passage expressly states that after 90 days, an employee's position may be filled. In addition, numerous other provisions throughout the handbook allow Medical Mutual discretion in making termination decisions. Specifically, the handbook contains numerous disclaimers that Medical Mutual's employment policies do not constitute a written contract, that employment is at-will, and that the Company may terminate employment at any time, for any reason or no reason. Such disclaimers, absent fraud in the inducement, preclude the use of a written employee handbook to demonstrate an implied contract of employment. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,110; Handler v. Merrill Lynch Life Agency, Inc. (1993), 92 Ohio App.3d 356.
After a careful reading of the employee handbook, we find no evidence that the rules and regulations contained in the employee handbook altered the at-will character of the employment relationship between the parties; there is no evidence of any specific promise of job security or that an implied contract for a definite term of employment existed. Consequently, this court finds appellant's claim for breach of contract based upon Medical Mutual's employee handbook fails as a matter of law.
Appellant next contends that her termination from Medical Mutual was wrongful based upon oral representations made to her by company employees which altered the terms and conditions of her employment such that she believed she could not be terminated for taking extended medical disability leave.
In support, appellant first refers to a representation made by Debra Green, a Human Resource Generalist, during her orientation nine years earlier, that employees could not be terminated unless there was just cause. Ms. Green denies making such a statement. However, even assuming this statement was made by Ms. Green, she did not have the authority to alter the terms and conditions of appellant's employment. Ms. Green worked in the Human Resources Department and did not have the authority to hire or fire appellant. The employee handbook clearly states that no supervisor or managerial employee of Blue Cross Blue Shield of Northern Ohio, other than the Vice-President of Human Resources or the President of the Company has any authority to enter into any agreement for employment for any specified period of time, or make any agreement contrary to the foregoing. In light of this language, we cannot construe Ms. Green's statement as altering the terms and conditions of appellant's employment. See Moore v. Kings Island (Apr. 6, 1998), Warren App. No. CA97-09-097, unreported.
Moreover, even if Ms. Green had the authority to make such a statement, we do not find that it was legally sufficient to establish an oral employment contract. This court has consistently held that oral representations that an employer will only terminate for just cause are only unilateral statements of company policy and not sufficient to alter an at-will employment agreement. Rayel v. Wackenhut Corp. (June 8, 1995), Cuyahoga App. No. 67459, unreported; Milkes v. Medic Discount Drug Stores (Dec. 1, 1994), Cuyahoga App. No. 66696, unreported; Lake v. Wolff Bros. Supply, Inc. (Nov. 10, 1993), Cuyahoga Cty. App. No. 63959, unreported; Rambo v. E.B.P., Inc. (Oct. 19, 1989), Cuyahoga App. No. 55658, unreported.
Next, appellant in her brief alleges that after her termination she had a telephone conversation with Jack Burry, then-President of Medical Mutual, who stated that certain procedures should have been followed prior to her termination. Appellant during oral argument conceded that any statements made after her employment had ended could not create an implied employment contract between the appellant and her employer.
After a review of the record, we find that the oral representations made to appellant cannot serve as the basis for a finding that her status as an employee-at-will had been altered. Consequently, this court finds appellant's claim for breach of contract based upon the oral representations made by employees of Medical Mutual fails as a matter of law.
Finally, appellant contends that her termination from Medical Mutual was wrongful based upon internal company policy and custom which altered the terms and conditions of her employment. Specifically, appellant alleges that she was not treated in the same manner as other employees on extended disability leave since other employees in similar situations were permitted to keep their positions or obtain new ones within the company.
Appellant has not presented any evidence to support this allegation. She has not, for example, provided any details, such as names of persons who were absent from work for more than 180 days and retained employment, to support her allegation of unequal treatment by Medical Mutual. Appellant's failure to do so is fatal to her claim of disparate treatment. See Walton v. Greater Cleveland Regional Transit Authority (June 29, 2000), Cuyahoga App. No. 76274, unreported; Moore v. Kings Island, supra. Accordingly, this court finds appellant's claim for breach of contract based upon inconsistent treatment of employees fails as a matter of law.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________________ JAMES J. SWEENEY, PRESIDING JUDGE
COLLEEN CONWAY COONEY, J., and TERRENCE O'DONNELL, J., CONCUR.