TOHLINE ET AL., APPELLANTS, *v.* CENTRAL TRUST COMPANY, N.A., ET AL., APPELLEES.

(No. C-870773 — Decided September 7, 1988.)

*John H. Metz,* for appellants.
*Timothy L. Timmel,* for appellee Central Trust Company, N.A.
*John J. Finnigan, Jr.,* for appellees Diebold Company and Lee H. Shafer.

*Paul C. Sunderland,* for appellees General Electric Company, General Electric Company Aircraft Engine Group, James R. Walz, Robert McMahon, Michael Waugh, Charles Harrison and Donald Lester.

*Per Curiam.* Appellants Richard and Starla Tohline filed a multi-count lawsuit in which they accused appellees General Electric Company, Central Trust Company, Diebold Company, and some of their employees of intentional and negligent tortious activity in connection with Richard's discharge from General Electric's employment. The trial court granted summary judgment to twelve defendants and dismissed two other defendants. The appeal derives from the entries granting summary judgment.

General Electric employed appellant as a manager for procurement and supplied him with two handbooks describing employment policies. Appellant held a position of trust, and generally his managers viewed his performance favorably.

In October 1984, appellant withdrew money from an "Owl" automatic teller machine. Because the day was windy, appellant lifted the door to the money dispenser slightly and extracted the cash. The machine emitted some sounds, returned the access card but did not issue a receipt. In response to appellant's inquiry about his account the following day, General Electric Credit Union indicated that his account showed a simultaneous withdrawal and deposit of the amount of money withdrawn the day before. Appellant knew that he had not made a deposit. A short time later, appellant successfully repeated the procedure. At work, appellant encouraged a colleague to try the procedure and accompanied him as he successfully withdrew money from an Owl machine on General Electric's premises without being issued a receipt.

Appellant called Central Trust, operator of the Owl network, and offered to describe the problem with the machine; he also inquired about whether Central Trust gave a "finder's fee" in such circumstances. He called Diebold, manufacturer of the machines, with the same offer and query. Both companies declined the offer and undertook internal investigations. Diebold sent Central Trust a letter that expressed Diebold's confidence in the machines. Central Trust conducted a background check of appellant, decided to drop the matter and informed General Electric of the events.

Several managers of General Electric held informal hearings to obtain appellant's and his colleague's version of the story. The hearings led the managers to doubt the judgment and integrity of these two employees. Given the option of resignation or discharge, the colleague chose the former and appellant the latter.

In a case such as this involving the propriety of summary judgment, the trial court and appellate court apply the same standard:

(1) whether a genuine issue as to any material fact remains to be litigated;

(2) whether the moving party is entitled to judgment as a matter of law; and

(3) whether it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274.

Affirmative answers to all three questions are required before summary judgment can be granted.

The first five assignments of error,

relating to General Electric and its employees, read:

"First Assignment of Error

"The trial court erred to the prejudice of plaintiffs-appellants by granting summary judgment in favor of General Electric (and individual defendants) as to the issue of breach of contract and finding that such was an employment-at-will.

"Second Assignment of Error

"The trial court erred to the prejudice of plaintiffs-appellants by finding that reasonable minds could not conclude that defendant General Electric made representations in [sic] which appellant relied on [sic] to his detriment.

"Third Assignment of Error

"The trial court erred to the prejudice of the plaintiff-appellants [sic] in granting summary judgment on the record as it existed since issues of material fact were unresolved.

"Fourth Assignment of Error

"The trial court erred to the prejudice of plaintiff-appellants [sic] and in favor of defendant General Electric and individual defendants employed by General Electric in finding facts and weighing the credibility of witnesses for purposes of summary judgment.

"Fifth Assignment of Error

"The trial court erred to the prejudice of the plaintiffs-appellants in granting summary judgment to General Electric (and individual defendants) as to plaintiffs' claim for interference with contract, defamation, infliction of serious emotional distress, invasion of privacy and negligent investigation."

At oral argument, appellate counsel conceded that these assignments, taken together, fundamentally challenge the summary judgment entered in favor of General Electric and its named employees. We will treat these five assignments of error collectively. See App. R. 12(A).

Generally, an oral agreement of employment of no fixed duration is at will, meaning that the employee is free to seek work elsewhere and that the employer may discharge the employee without cause. *Henkel* v. *Educational Research Council of America* (1976), 45 Ohio St. 2d 249, 74 O.O. 2d 415, 344 N.E. 2d 118. Implied contract and promissory estoppel are the two exceptions that Ohio recognizes to the doctrine of employment at will. Under the implied-contract exception, a handbook may be found to alter the terms of employment at will if the employee and employer agreed to create a contract from the writing. Cf. *Henkel, supra.* Absent mutual assent, a handbook becomes merely a unilateral statement of rules and policy which creates no obligations and rights. *Mosley* v. *Warrensville Heights* (May 19, 1988), Cuyahoga App. No. 53930, unreported. The doctrine of promissory estoppel applies to a clear promise which the employer should reasonably expect to induce reliance by the employee, who does rely on the promise and suffers injury as a result. *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150. The effect is to limit an employer's right to discharge an employee.

To support his claim of implied contract, appellant produced two handbooks distributed by General Electric. In one handbook, General Electric reserved the right to discharge an employee for a legitimate reason as contemplated in the handbook. However, the entire paragraph reads:

"Finally, this guide is not intended to be a contract or create contractual obligations. The practices may be changed from time to time as need

arises, and your employment with the Company is not for any fixed period of time. Just as you have the right to resign and leave the Company at any time for any reason, the Company may terminate your employment at any time for any legitimate reason."

This paragraph must be construed as a whole; appellant cannot rely on certain sentences while disregarding others. *Smith* v. *St. Elizabeth Medical Ctr.* (Oct. 14, 1986), Montgomery App. No. CA 9676, unreported. The disclaimer manifests the absence of mutual assent to create a contract, and a contract will thus not be implied based on this handbook. Cf. *Brown* v. *Otto C. Epp Memorial Hospital* (1984), 19 Ohio App. 3d 25, 19 OBR 90, 482 N.E. 2d 988; *Hedrick* v. *Center for Comprehensive Alcohol Treatment* (1982), 7 Ohio App. 3d 211, 7 OBR 272, 454 N.E. 2d 1343.

The second handbook does not contain a disclaimer and, with the facts construed most favorably for appellant, would constitute an implicit contractual modification of the employment at will. General Electric stated its policy concerning employee misconduct in this handbook:

"Exempt employees are expected to use good judgment and discretion in the management of·their personal and Company affairs. When the conduct of an individual's personal affairs adversely influences performance on the job, this becomes a matter of legitimate concern to the manager. In business dealings, integrity is essential. Consequently, fraudulent acts are viewed as serious breaches of conduct and in the absence of mitigating circumstances will result in dismissal."

Indisputedly, General Electric questioned appellant on his version of the withdrawals and concluded that appellant could not occupy a position of trust in the company.[1] Appellant has not shown any facts demonstrating that General Electric breached this policy, even if the handbook is construed as altering the terms and conditions of employment.

The second exception to the employment-at-will doctrine is promissory estoppel, described earlier as binding an employer to a clear promise which the employer should reasonably expect to induce reliance by an employee, who does so rely to his detriment. *Mers, supra.* Assuming that General Electric did make enforceable promises, we hold that appellant has failed to show how his reliance on those promises operated to his detriment. Again, after investigation and a hearing, General Electric concluded that the events reflected poorly on appellant's judgment and character. Though General Electric's determination was adverse to appellant, that is not the detrimental reliance which promissory estoppel requires. Finally, the record contains absolutely no basis on which to attribute contractual or promissory liability to General Electric's named employees individually.

In his second amended complaint, appellant alleged that the named General Electric employees tortiously interfered with his employment contract with General Electric. On appeal, however, he contends that General Electric and its employees tortiously interfered with his attempt to find new employment. That which was not raised in the trial court may not be raised on appeal. See *Kalish* v. *Trans World Airlines, Inc.* (1977), 50 Ohio

---

[1] The only mitigating circumstance disclosed by appellant was that his monthly statement from the credit union stated accurately the withdrawals without accompanying deposits. However, the record reveals two opportunities where appellant could have explained the odd circumstances of his withdrawals and yet chose silence.

St. 2d 73, 4 O.O. 3d 195, 362 N.E. 2d 994.

Appellant also advanced a claim for defamation, the elements of which are (1) an unprivileged publication, (2) false and defamatory language about another, and (3) requisite malice. See *McCarthy* v. *Cincinnati Enquirer, Inc.* (1956), 101 Ohio App. 297, 1 O.O. 2d 131, 136 N.E. 2d 393. Defamation actionable *per se* includes that which reflects perniciously on a person's character or injures one in his trade, profession or occupation. *Becker* v. *Toulmin* (1957), 165 Ohio St. 549, 60 O.O. 502, 138 N.E. 2d 391. If the defamatory words, are actionable *per se*, malice is presumed. *Id.* at 553, 60 O.O. at 504, 138 N.E. 2d at 395.

A publication may be protected by qualified privilege, broadly encompassing the communication of one, motivated by legal or moral considerations, who performs a public or private duty where one's interest lies. *Hahn* v. *Kotten* (1975), 43 Ohio St. 2d 237, 72 O.O. 2d 134, 331 N.E. 2d 713; *Kerns* v. *Parkview Markets, Inc.* (Oct. 1, 1986), Hamilton App. No. C-850812, unreported. If qualified privilege is demonstrated, then the plaintiff must show express malice, which is ill will, hatred, revenge, or wanton and reckless disregard for the truth on the defendant's part. *Hahn, supra,* at 248, 72 O.O. 2d at 141, 331 N.E. 2d at 721.

In his deposition, appellant could not recite what statements General Electric or its employees issued which were false. Assuming, however, the truth of appellant's unsupported allegations that these appellees did make false statements, we conclude that the qualified privilege applied to protect them. The record is devoid of any express malice attributable to appellees, and appellant himself testified in his deposition that none of the appellees bore him ill will. He could say only that his managers misapprehended the facts.

Appellant alleged that General Electric and its employees inflicted emotional distress upon him and his family. Liability for negligent infliction of emotional distress arises where a bystander to an accident suffers serious and foreseeable emotional injuries. *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759; see *Binns* v. *Fredendall* (1987), 32 Ohio St. 3d 244, 513 N.E. 2d 278; *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 4 OBR 376, 447 N.E. 2d 109. Appellant has failed to show even a single element of this tort. The underlying act, his discharge, was not a physical accident, and no serious emotional injury to him or his wife was noted. The facts are not special, as for example in a case involving the abuse of a corpse. See *Paugh, supra,* at 77, 6 OBR at 118, 451 N.E. 2d at 764. Recovery will therefore not lie.

The Ohio Supreme Court has held that intentional infliction of emotional distress subjects a person to liability for emotional and bodily injuries resulting from the person's extreme and outrageous conduct. *Reamsnyder* v. *Jaskolski* (1984), 10 Ohio St. 3d 150, 10 OBR 485, 462 N.E. 2d 392; *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 6 OBR 421, 453 N.E. 2d 666. Facts which would cause an average person to resent the tortfeasor and would lead him to exclaim "Outrageous!" demonstrate the culpable conduct. *Reamsnyder, supra* at 153, 10 OBR at 487, 462 N.E. 2d at 394. Appellant has not shown that General Electric or its employees intentionally acted to injure him in any respect and has utterly failed to indicate any emotional harm beyond hurt feelings.

The tort of invasion of privacy, which was also alleged in appellants' complaint, is the wrongful intrusion into one's private activities which would cause outrage, mental suffering, shame or humiliation in a person of ordinary sensibilities. *Housh* v. *Peth*

(1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E. 2d 340. General Electric and its employees did no more than investigate by asking appellant questions, which does not constitute a wrongful intrusion where the appellant's activities potentially cast a pall on his trustworthiness at work. Again, appellant has failed to explicate how the questioning caused him to experience anything more than hurt feelings.

Appellant observes that one who undertakes a duty which one is not obligated to discharge must perform the duty with ordinary care. Assuming that General Electric volunteered to conduct a thorough investigation prior to terminating appellant, we nonetheless observe that the most appellant stated in his deposition was that General Electric could have been more circumspect. Appellant did not allege or prove how General Electric or its employees acted with less than reasonable care.

Appellant argues that genuine issues of material fact exist, and that the court erroneously considered the credibility of witnesses. Plainly, the record lacks any indication that the court weighed evidence. In attempting to show issues of fact, at best appellant could only say that he was not treated fairly. In sum, from the analysis above we conclude that no genuine issues of material fact exist and, though construing the facts most favorably for appellant, we nevertheless decide that as a matter of law General Electric and its employees are entitled to judgment. The first through fifth assignments of error lack merit.

The next two assignments of error are:

"Sixth Assignment of Error

"The trial court erred to the prejudice of the plaintiffs-appellants by granting summary judgment to defendant Central Trust Company upon the record before the court.

"Seventh Assignment of Error

"The trial court erred to the prejudice of the plaintiff-appellants [*sic*] in granting summary judgment to Central Trust Company on the issue of defamation."

At oral argument, appellate counsel agreed that the sixth assignment of error includes the seventh, and that the essential challenge goes to the issue of defamation.[2]

The rules and principles discussed earlier apply equally to the disposition of these assignments of error. The record amply shows that Central Trust possessed a qualified privilege for its communications to General Electric. In his deposition appellant negated the possibility that Central Trust or its employees exhibited ill will or reckless disregard for the truth. With no factual dispute, and with Central Trust and its employees being entitled to judgment as a matter of law, we overrule the sixth and seventh assignments of error.

The last assignment of error recites:

"Eighth Assignment of Error

"The trial court erred to the prejudice of plaintiff-appellants [*sic*] in granting summary judgment to defen-

---

[2] In his complaint, appellant alleged that Central Trust invaded his privacy. One of the issues for review in the fifth assignment of error referred to the invasion of privacy. In the interest of completeness, we rule on this issue and hold that appellant failed to show how Central Trust improperly intruded to cause outrage or shame in appellant. Central Trust prudently investigated the possibility that money could be withdrawn without record. Appellant invited the investigation with the call that he placed to Central Trust.

dant Diebold (and Shafer) as to plaintiff's claims for defamation.''

Shafer, an employee of Diebold, sent a letter to Central Trust, expressing the opinion that appellant's course was at best unethical or even illegal.

Diebold manufactured the Owl machines which Central Trust used. Both had a common interest in the integrity of the machines. The letter was covered by qualified privilege, and appellant himself negated the possibility of malice on Diebold's or Shafer's part. The eighth assignment of error is without merit.

We accordingly affirm the judgments of the trial court.

*Judgments affirmed.*

BLACK, P.J., DOAN and KLUS-MEIER, JJ., concur.