Kevin Adams appeals from a judgment of the Greene County Court of Common Pleas, which entered summary judgment in favor of K-Mart Corp. ("K-Mart") and its employee, Mark Ipock, on Adams' claims for intentional tort, breach of contract, and reckless infliction of serious bodily harm.
The facts and procedural history are as follows.
Adams was employed by K-Mart first as a loss control associate and then as a loss control manager. In these positions, Adams' primary job responsibilities were the identification and detention of shoplifters and the prevention of shoplifting. Adams had worked in these capacities at K-Marts in Fairborn, Beavercreek, and Xenia.
On January 30, 1995, Adams was working as the loss control manager at the Fairborn K-Mart, and Mark Ipock was the manager in charge of the store. At approximately 5:00 p.m., Adams observed Sidney Bigham, a juvenile, conceal merchandise in his jacket and attempt to leave the store without paying for the merchandise. Adams followed Bigham into the vestibule of the store and out onto the sidewalk where he attempted to stop Bigham. An altercation ensued causing Adams to suffer injuries to his mouth and eye and bruises to his face and body. The altercation was witnessed by numerous other K-Mart employees and customers. Specifically, the altercation was witnessed by Ipock, who was nearby at the Service Desk. Ipock took no steps to help Adams, to enlist the help of other store employees, or to call the police. Another employee eventually called the police, who arrested Bigham nearby a short time later. Adams did not return to work for several months and received workers' compensation benefits.
On January 18, 1996, Adams filed a complaint against K-Mart and Ipock alleging intentional infliction of serious bodily harm and reckless infliction of serious bodily harm (Case No. 96-CV-31). An arbitration was conducted in October 1996, and the panel awarded Adams $90,000 against K-Mart and Ipock. K-Mart and Ipock appealed the arbitration award to the trial court. Adams subsequently dismissed his complaint and refiled a complaint against K-Mart and Ipock on November 21, 1996 alleging breach of contract in addition to his other claims (Case No. 96-CV-657). With respect to Bigham and his mother, the complaint alleged battery and "parental liability for assault," respectively. K-Mart and Ipock answered and filed a motion for summary judgment. The trial court granted the motion for summary judgment on October 31, 1997. Adams subsequently dismissed his claims against Bigham and his mother and appealed from the trial court's judgment.
Adams raises four assignments of error on appeal.
 I. IT IS ERROR TO GRANT SUMMARY JUDGMENT WHEN THE MOVING PARTY HAS FAILED TO SPECIFICALLY POINT TO EVIDENCE WHICH AFFIRMATIVELY DEMONSTRATES THAT THE NON-MOVING PARTY HAS NO EVIDENCE TO SUPPORT ITS CLAIMS.
 II. IT IS ERROR TO GRANT SUMMARY JUDGMENT WHEN THE EMPLOYER KNEW THAT INJURY WAS CERTAIN TO OCCUR AND YET MADE NO EFFORT TO ENSURE THE SAFETY OF ITS EMPLOYEE.
Adams claims that K-Mart and Ipock failed to show that he had not presented evidence to support his intentional tort claim or that, in the alternative, he had met his "reciprocal burden" to show that there was a genuine issue of material fact.
An intentional tort by an employer against an employee is defined very narrowly where the employee is covered under Ohio's workers' compensation laws. To establish "intent" for the purpose of proving that an employer committed an intentional tort against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, or condition within its business operation; (2) knowledge by the employer that, if the employee is subjected by his employment to the dangerous process, procedure, or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances and with such knowledge, acted to require the employee to continue to perform the dangerous task.Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus, modifying Van Fossen v. Babcock Wilcox Co.
(1988), 36 Ohio St.3d 100, paragraph five of the syllabus. Upon motion for summary judgment by the employer, the employee must set forth specific facts showing that there is a genuine issue regarding whether the employer committed an intentional tort against him. Van Fossen, supra, at 117.
The trial court found that K-Mart had not been substantially certain that Adams would be seriously injured in his position as a loss control manager and that Adams had not been required to continue to perform the dangerous task. Thus, the trial court found that Adams had failed to satisfy both the second and the third prongs of the Fyffe test for an intentional tort by an employer.
Even if we assume, for the sake of argument, that Ipock's observation of the altercation between Adams and Bigham gave K-Mart knowledge that harm was substantially certain to occur in the context of Adams' employment, the trial court properly granted summary judgment on the intentional tort claim because Adams had failed to present any evidence that K-Mart required him to continue to perform the dangerous task. It is undisputed that the K-Mart Loss Prevention Handbook advised discontinuing an apprehension and turning the matter over to the police if it became necessary "to do more than firmly grasp the suspect's arm in a guiding manner." Likewise, a Loss Control Directive supplementing the Loss Prevention Handbook stated that a detention should be aborted if a suspect "becomes violent and cannot be controlled by a holding force. Holding force is defined as a grasping force sufficient to seize and detain the suspect." Adams did not allege that Ipock or anyone else from K-Mart forced or encouraged him to ignore this policy or to persist in the struggle with Bigham once it became clear that the minimal force recommended by the company manual would be insufficient to detain Bigham. Adams simply alleged that Ipock did nothing to stop the assault. Adams' inability to extricate himself from the altercation did not establish that K-Mart required him to continue. The trial court properly concluded that Adams had not created a genuine issue of material fact that he was required to continue to perform the dangerous task of apprehending a shoplifter and, thus, that he had not satisfied the third element of the Fyffe test.
The first and second assignments of error are overruled.
 III. IT IS ERROR TO FIND THAT NO BINDING AGREEMENT EXISTED BETWEEN APPELLANT AND APPELLEE SIMPLY BECAUSE APPELLANT WAS AN AT-WILL EMPLOYEE.
Adams contends that the K-Mart Store Operating Policies Manual, which provided for the use of an emergency assistance code if loss control personnel needed assistance, created a binding contract that K-Mart breached by failing to use the code. Adams also claims that he should recover under a theory of promissory estoppel because the store, through its policies, had promised to assist him in a crisis by calling other employees to his aid, because he had acted in reliance on this policy, which the store failed to execute, and because he had been harmed as a result of the store's failure.
Adams cannot maintain a claim based on promissory estoppel for two reasons. First, he did not state such a cause of action in his complaint or otherwise raise the matter in the trial court, and he may not raise it for the first time on appeal.Schaefer v. DeChant (1983), 11 Ohio App.3d 281, 282-283. Secondly, Ohio's workers' compensation laws were implemented to compensate employees for injuries sustained in the workplace. The constitutional provision which empowered the General Assembly to provide for such injuries, Section 35, Article II, Ohio Constitution, and the legislation that followed were public policy trade-offs. Van Fossen, supra, at 110. Employees obtained a certain and speedy recovery for their injuries, in exchange for which they sacrificed their right to bring common law actions against employers and fellow employees; employers were required to contribute to the workers' compensation fund, in exchange for which their liability for any injury to an employee was limited. Id.; R.C. 4123.74. It is in this context that the supreme court has preserved a very narrow intentional tort exception to the constitutional provision and statutes creating workers' compensation, which appear to prohibit an employee from bringing an action for damages against his employer for any injury.
Adams seeks to recover damages for an injury sustained in the workplace, and we are of the view that, as a beneficiary of the workers' compensation system, the only avenue through which he may seek such recovery is a claim for intentional tort. In other words, under the workers' compensation laws of this state, Adams may not recover for injuries sustained in the workplace pursuant to a claim for promissory estoppel. Adams' claim for reckless infliction of serious bodily harm suffered from the same infirmity.
Adams' breach of contract argument relies upon a theory of implied contract based upon a company handbook. As with the promissory estoppel argument discussed supra, it is our view that Ohio's workers' compensation laws bar an action by an employee against an employer for injuries sustained in the workplace under any theory other than intentional tort. Thus, Adams cannot recover for his injuries pursuant to a claim for breach of contract.
Furthermore, we discussed Adams' implied contract theory in the context of the doctrine of employment-at-will inHenning v. Marriott Hotel and Resorts, Inc. (May 24, 1995), Montgomery App. No. 14926, unreported. In Henning, we stated:
 '[A] handbook may be found to alter the terms of employment at will only if the employee and employer have agreed to create a contract from the writing.' Tohline v. Central Trust Co., N.A.
(1988), 48 Ohio App.3d 280, 282-83. See, also, Uebelacker v. Cincom Systems, Inc. (1988), 48 Ohio App.3d 268, 273-74; Vitanza v. First Natl. Supermarkets, Inc. (1993), Cuyahoga App. No. 62906, unreported. In the absence of mutual assent, a handbook is merely a unilateral statement of rules and policies which creates no rights or obligations. Tohline, supra, at 282. Furthermore, in the absence of fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph one of the syllabus.
Adams claims that the K-Mart Store Operating Policies Manual amounted to a contract between K-Mart and him that bound K-Mart and its employees to come to his assistance in an altercation with a shoplifter. Adams has presented no evidence, however, that he and K-Mart agreed to create a contract from the Store Operating Policies Manual so as to create any rights or obligations for the parties. Moreover, the manual specifically provides that "[t]he material in this manual is not intended to create any contractual relationships or alter the character of the employment relationship in any way." Because Adams has not alleged fraud in the inducement, this disclaimer precludes interpreting the handbook as a contract. Wing, supra.
Adams claimed in his response to the motion for summary judgment that cases cited by K-Mart, including Wing, in which courts found that a handbook or manual did not create an agreement for employment other than employment-at-will were irrelevant because he did not dispute the at-will nature of the parties' relationship. We disagree. Adams' argument is premised on his belief that the manual created obligations on K-Mart's part that became a part of the employment agreement. For our purposes, we find no meaningful distinction between Adams' attempt to imply terms of employment from the handbook and the efforts of employees in other cases to establish that their employment relationships were not at-will. In either situation, an employee attempts to use a handbook or manual in an effort to establish characteristics of the employment relationship that are not otherwise apparent. The trial court properly concluded that Adams had no cause of action for breach of an employment contract.
The third assignment of error is overruled.
 IV. IT IS ERROR TO GRANT SUMMARY JUDGMENT WHEN REASONABLE MINDS HAVE ALREADY COME TO A CONCLUSION FAVORABLE TO APPELLANT.
Adams contends that the fact that an arbitration panel ruled in his favor proves that reasonable minds can differ on the outcome of this case and that summary judgment was therefore inappropriate. Adams has cited no authority for the proposition that the trial court's decision on K-Mart's motion for summary judgment was constrained by the findings of the arbitration panel, and we are aware of none. The trial court properly relied on its own assessment of the law and the evidence in concluding that Adams had not created a genuine issue of material fact regarding his intentional tort claim.
The fourth assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Don Brezine Brian D. Goldwasser Hon. M. David Reid