Marilyn AMADIO, Plaintiff,

v.

Thomas SKOVIRA, et al., Defendants.

No. 4:01CV924.

United States District Court, N.D. Ohio, Eastern Division.

March 18, 2002.

Alan Belkin, Diane M. Gonda, Gonda & Associates, Cleveland, OH, for Plaintiff.

John D. Latchney, Tomino & Latchney, Medina, OH, Michael W. Piotrowski, Fraternal Order of Police Ohio Labor Council, Inc., Akron, OH, for Defendants.

## MEMORANDUM OF OPINION AND ORDER

POLSTER, District Judge.

Before the Court are Defendant Joseph Gabriel's Motion for Summary Judgment (**ECF No. 19**) and Defendant Thomas Skovira's Motion for Summary Judgment (**ECF No. 20**). For the reasons stated below, both motions are **GRANTED**.

### I. BACKGROUND

Plaintiff Marilyn Amadio was employed by the City of Struthers as a secretary to Robert Norris, Chief of the City of Struthers, Ohio Police Department. (ECF No. 18, ¶ 3). Defendant Thomas Skovira is a captain in the Struthers Police Department. *Id.* at ¶ 1. In approximately March 2000, Skovira received an anonymous telephone message indicating that Plaintiff had been falsifying her time records. *Id.* at ¶ 2. The message purportedly stated that during the Christmas season, Plaintiff had been working at a Kaufmann's store during parts of the day when she also was working for the City of Struthers. *Id.* at Ex. B. Before speaking to the Chief of Police, Skovira began an investigation into the alleged time card fraud. *Id.*

Skovira contacted Defendant Joseph Gabriel, a retired Struthers police officer, and asked whether he had any contacts at Kaufmann's in management or security. *Id.* at Ex. C. Gabriel spoke to a friend who referred him to Keith Spencer, who held a management-level security position at the store. *Id.* Skovira and Gabriel subsequently drove out to the store and met with Spencer. Skovira told Spencer that he was investigating Plaintiff and requested copies of her Kaufmann's time records for November 24, 1999 through March 4, 2000. *Id.* at ¶¶ 7, 8 and Ex. A. Spencer, believing that Skovira and Gabriel were officers conducting an official investigation, contacted Kaufmann's legal department to obtain permission to release the time records. *Id.* at ¶ 8. The legal department instructed Spencer to cooperate with the investigation. *Id.* at ¶ 10. Spencer then delivered the records to Gabriel, who provided them to Skovira. *Id.* at ¶ 12. Skovira's unofficial investigation indicated that Plaintiff had been working at Kaufmann's during hours for which she had also been paid by the City of Struthers. *Id.* at Ex. B.

Skovira subsequently reported his findings to the mayor. Plaintiff responded to Skovira's allegations by contending that she had not committed time card fraud, and had simply been using her accrued leave. On August 28, 2000, the City of Struthers suspended Plaintiff for three days without pay for "failure to maintain adequate documentation to accumulated time for the period of November 1999 through March 2000." *Id.* at Ex. E. The City of Struthers also disciplined Chief Norris for improper record keeping regarding Plaintiff's work schedule and accumulated time. *Id.* at ¶ 16. On September 11, 2000, Chief Norris suspended Skovira for six days for failing to report the anonymous allegation of Plaintiff's misconduct and for initiating his own investigation into the matter. *Id.* at Ex. D.

On April 16, 2001, Plaintiff filed a Complaint (ECF No. 1) against Defendants Joseph Gabriel and Thomas Skovira in which she alleged that the defendants violated her constitutional and common law rights to privacy and intentionally caused her emotional harm by obtaining her time records from her part-time job without her consent. On October 2, 2001, Defendant Gabriel filed his Motion for Summary Judgment. (ECF No. 19). On November 2, 2001, Defendant Skovira filed his Motion for Summary Judgment. (ECF No. 20). Plaintiff filed a response brief on January 10, 2002. (ECF No. 25).

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmoving party. See *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993).

Summary judgment is appropriate if a party who bears the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477

U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–248, 106 S.Ct. 2505. In order for there to be a genuine issue for trial, there must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

As stated by the Supreme Court:

.... Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' [citations omitted] ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

**B. Constitutional Invasion of Privacy**

■ Plaintiff contends that the defendants violated her right to privacy under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by obtaining confidential records relating to her part-time employment while acting under color of state law. (ECF No. 1, ¶ 7). The Court disagrees.

The constitutional right to privacy that is rooted in the Fourteenth Amendment includes an individual's right to make personal choices and an individual's "right to control the nature and extent of information released about that individual." *Bloch*

*v. Ribar,* 156 F.3d 673, 683 (6th Cir.1998). The Sixth Circuit has narrowly construed Supreme Court cases concerning informational privacy, holding that such a right is triggered only when the interest at stake concerns "those personal rights that can be deemed 'fundamental' or 'implicit' in the concept of ordered liberty." *J.P. v. De-Santi,* 653 F.2d 1080, 1090 (6th Cir.1981). Thus, while a constitutional right to nondisclosure of certain types of private information exists, not all disclosures of private information triggers constitutional protection. *Bloch v. Ribar,* 156 F.3d at 683.

The Sixth Circuit employs a two-step process for analyzing informational right to privacy claims. *Id.* First, "the interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty." *Id.* Second, "the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private." *Id.* A court need not go on to the second step of the analysis if the first step reveals that no fundamental or traditional right was implicated. *Id.*

In this case, Plaintiff has not established that any fundamental or traditional right was implicated when Defendants obtained her time records. Plaintiff's reliance on case law concerning the release of confidential financial information is not persuasive. Defendants in this case did not obtain any information regarding Plaintiff's financial transactions, credit history, or other financial records. Rather, Defendants simply obtained information regarding the hours Plaintiff worked during a four-month time period. Such records are not financial in nature and in no way compare to the types of records for which the Sixth Circuit has found a constitutional right to privacy to exist. *See, e.g., Kallstrom v. City of Columbus,* 136 F.3d 1055 (6th Cir.1998) (release of undercover police

officers' personnel files to members of a violent gang they had infiltrated and were testifying against violated officers' privacy interest in preserving their lives, personal security, and bodily integrity); *Bloch v. Ribar*, 156 F.3d 673 (6th Cir.1998) (release of crime records revealing confidential and highly personal details of victim's rape implicates fundamental right to privacy).

Even if Plaintiff were able to establish that the release of her time records implicated a fundamental or traditional right, her claim would not be able to survive the second part of the analysis. Although Defendant Skovira did not follow the proper procedures for investigating the anonymous allegations of fraud, the investigation nonetheless revealed inconsistencies in Plaintiff's time records and ultimately resulted in disciplinary action against Plaintiff and the Chief of Police. Under these circumstances, it cannot be said that Plaintiff's interest in keeping her time records confidential outweighed the City of Struthers' interest in preventing improper recording of employee time. Consequently, Defendants are entitled to judgment as a matter of law as to Plaintiff's constitutional invasion of privacy claim.

### C. State Law Invasion of Privacy

Under Ohio law, "[a]n actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340, syllabus (1956). Plaintiff claims that Defendants' investigation into time records from her part-time job was a wrongful intrusion into her private affairs.

In order to sustain her invasion of privacy claim, Plaintiff must establish that Defendants intruded into her private affairs and that such an intrusion would "shock the ordinary person to the point of emotional distress." *Haller v. Phillips*, 69 Ohio App.3d 574, 577, 591 N.E.2d 305 (1990). An invasion of privacy claim "must involve the viewing of affairs that are private and not in public view." *York v. General Electric Co.*, 144 Ohio App.3d 191, 194, 759 N.E.2d 865 (2001). In this case, Plaintiff's alleged "private affairs" are records of the hours that she worked at a department store fragrance counter in full view of the public. Because any member of the public could have observed Plaintiff working the hours stated in the released records, the records themselves do not constitute her "private affairs" within the meaning of Ohio law. *Id.* at 195, 759 N.E.2d 865 (video of plaintiff in public places was insufficient basis for invasion of privacy claim). Moreover, an investigation into an employee's activities where those activities could cast a pall on the employee's trustworthiness at work does not constitute an invasion of privacy. *See, e.g., Tohline v. Central Trust Co.*, 48 Ohio App.3d 280, 285, 549 N.E.2d 1223 (1988); *Powers v. Pinkerton, Inc.*, Case No. 76333, 2001 WL 60035 (Ohio App.8th Cir. Jan. 18, 2001). Finally, the release of an employee's time records from a part-time job simply would not shock an ordinary person to the point of emotional distress. *See, e.g., State ex rel. Petty v. Wurst*, 49 Ohio App.3d 59, 60, 550 N.E.2d 214 (1989) (disclosure of county employee's name, job title, salary rate, and gross salary unlikely to result in measurable embarrassment, harassment, physical danger, disgrace, or loss of employment or friends). For these reasons, Plaintiff's state law invasion of privacy claim must fail as a matter of law.

## D. Intentional Infliction of Emotional Distress

 Plaintiff contends that Defendants intentionally inflicted emotional distress upon her by obtaining her time records from Kaufmann's. In order to sustain a claim for intentional infliction of emotional distress, Plaintiff must prove the following elements:

(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;

(2) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community;

(3) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and

(4) that the mental anguish suffered by Plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Phung v. Waste Management, Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994); *Miller v. Premier Industrial Corp.*, 136 Ohio App.3d 662, 674, 737 N.E.2d 594 (2000).

 The Supreme Court of Ohio has held that "... in order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be severe." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983). Further, "[s]erious emotional distress requires an emotional injury which is **both severe and debilitating**." *Burkes v. Stidham*, 107 Ohio App.3d 363, 375, 668 N.E.2d 982 (1995) (citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983) (emphasis added)).

Plaintiff has failed to offer evidence that would satisfy the required elements articulated in *Phung* and *Miller, supra.* There is no evidence that Defendants intended to cause Plaintiff severe emotional distress. Furthermore, Defendants' investigation into her time records was not extreme and outrageous, especially given the fact that Plaintiff was a public employee who was working at a department store during the hours of her public employment. Plaintiff has offered no evidence to suggest that she experienced psychic injury as the result of Defendants' actions or that the nature of her injury was so severe that no reasonable person could be expected to endure it. Consequently, Plaintiff cannot sustain a claim for intentional infliction of emotional distress.

## III. CONCLUSION

For the reasons stated above, the Court finds that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law as to each of Plaintiff's claims. Accordingly, Defendant Joseph Gabriel's Motion for Summary Judgment (**ECF No. 19**) and Defendant Thomas Skovira's Motion for Summary Judgment (**ECF No. 20**) are hereby **GRANTED**.

**IT IS SO ORDERED.**