[Cite as *Johnson v. Aultman Hosp.*, 2018-Ohio-1268.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| ANGELA JOHNSON | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellant | Hon. Craig R. Baldwin, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2017 CA 00145 |
| AULTMAN HOSPITAL, et al. | |
| | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
Pleas, Case No.  2016 CV 01468


JUDGMENT:                             Affirmed

DATE OF JUDGMENT ENTRY:        March 30, 2018

APPEARANCES:

For Plaintiff-Appellant                  For Defendants-Appellees

ANDREA L. WHITAKER                  BRUCE G.HEAREY
WILLIAM T. WHITAKER                  KATHLEEN J. SANZ
WILLIAM T. WHITAKER CO., LPA         OGLETREE, DEAKINS, NASH,
54 East Mill Street                       SMOAK & STEWART
Suite 301                                127 Public Square, Suite 4100
Akron, Ohio  44308                       Cleveland, Ohio  44114

*Wise, John, P. J.*

**{¶1}** Appellant Angela Johnson appeals the July 6, 2016, decision of the Stark County Common Pleas Court granting summary judgment in favor of Appellees Aultman Hospital and Marie Hooper.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** In December, 2012, Appellant Angela Johnson was hired by Appellee Aultman Hospital as an oncology nurse. In June, 2015, Aultman's Pharmacy Unit ran a routine, random audit of its nurses' narcotics withdrawal and administration records. Appellant's scores over a three-month period were found to be higher than usual and higher than her peers. Additionally, approximately twenty-one (21) discrepancies were found in which Appellant had either failed to document her administration of narcotics that she had withdrawn, or she had withdrawn more medication than a particular patient's prescription called for.

**{¶3}** On July 1, 2015, Appellee Marie Hooper, Appellant's immediate supervisor, met with Appellant to bring these discrepancies to her attention. Appellant was unable to provide an explanation for all of the discrepancies, and Appellant was suspended pending further investigation.

**{¶4}** On July 13, 2015, Hooper met with Appellant again and notified her that she was being terminated for failure to follow proper protocol regarding medication administration and for theft of narcotics. Appellant denied that she had stolen any drugs and initiated an action with the Ohio Unemployment Compensation Review Commission. Following hearings and testimony, the hearing officer on December 22, 2015, concluded that Appellant had been terminated for just cause.

{¶5} On June 24, 2016, Appellant filed a Complaint in the Stark County Court of Common Pleas against Appellees Aultman Hospital and Marie Hooper alleging eight causes of action: (1) breach of implied contract; (2) wrongful discharge; (3) libel; (4) slander; (5) tortious interference with employment relationship; (6) respondeat superior; (7) tortious interference with future employment; and (8) intentional infliction of emotional distress.

{¶6} On July 27, 2016, Appellees filed a Civ.R. 12(B)(6) Motion to Dismiss.

{¶7} On November 17, 2016, the trial court granted Appellees' motion to dismiss as to six of the eight causes of action. Appellant's causes of action for breach of implied contract and wrongful termination remained.

{¶8} On November 28, 2016, Appellant voluntarily dismissed her wrongful discharge claim, leaving only the claim for breach of implied contract against Aultman Hospital.

{¶9} On December 16, 2016, Appellant filed a new Complaint (Case No. 2016CV02741) reasserting only the defamation claims, and the two cases were consolidated on February 21, 2017.

{¶10} On April 17, 2017, Appellees filed a Motion for Summary Judgment.

{¶11} On July 6, 2016, the trial court granted Appellees' Motion for Summary Judgment.

{¶12} Appellant now appeals, assigning the following errors for review:

### ASSIGNMENTS OF ERROR

{¶13} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON WHETHER THERE EXISTS AN IMPLIED DUTY OF CONTINUED EMPLOYMENT

IN THE ABSENCE OF JUST CAUSE WHEN THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE ALLEGED BASIS OF THE DISCHARGE IS A FALSE CLAIM THAT CAUSES FORESEEABLE HARM BEYOND AND GREATER THAN LOSS OF EMPLOYMENT; TO WIT, THAT THE EMPLOYER CAUSED FORESEEABLE HARM BY DISCHARGING APPELLANT ON THE BASIS OF A FALSE ACCUSATION OF A THEFT OF DRUGS TRIGGERING A FALSE REPORT TO THE STATE BOARD OF NURSING.

{¶14} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANT'S DEFAMATION CLAIMS AS THERE ARE GENUINE DISPUTES OF MATERIAL FACT AS TO 1) WHETHER THE DEFENDANTS FALSE REPORT TO THE OHIO BOARD OF NURSING WAS MADE BY THE DEFENDANTS AND, IF SO, WHETHER IT IS PROTECTED BY QUALIFIED IMMUNITY, AND 2) WHETHER DEFENDANT MARIE HOOPER MADE DEFAMATORY STATEMENTS TO A FRIEND OF THE APPELLANT FALSELY CLAIMING THAT APPELLANT STOLE DRUGS FROM AULTMAN HOSPITAL"

### Summary Judgment Standard

{¶15} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. Civ.R. 56(C) provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact,

if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

{¶16} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence *759 which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

**I.**

{¶17} In her first assignment of error, Appellant argues that the trial court erred in granting summary judgment in favor of Appellees on her wrongful termination claims.

**{¶18}** Ohio is an employment at-will state. *Dohme v. Eurand Am., Inc.,* 130 Ohio St.3d 168, 2011–Ohio–4609, 956 N.E.2d 825, ¶ 11. Either party to an employment-at-will agreement may terminate the employment relationship for any reason that is not contrary to law. *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). Stated another way, an employee can be terminated for good cause, bad cause, or no cause at all. *Phung v. Waste Mgt., Inc.,* 23 Ohio St.3d 100, 491 N.E.2d 1114 (1986).

**{¶19}** The doctrines of implied contract and promissory estoppel are two exceptions to the general rule that "employment situations of no fixed duration are presumed to be at-will" and terminable at any time for any lawful reason. *Shetterly v. WHR Health Sys.,* 9th Dist. No. 08CA0026–M, 2009–Ohio–673, at ¶ 6–12.

**{¶20}** An employee seeking to prove the existence of an implied contract "bears the heavy burden of demonstrating (1) assurances on the part of the employer that satisfactory work performance was connected to job security; (2) a subjective belief on the part of the employee that he could expect continued employment; and (3) indications that the employer shared the expectation of continued employment." *Craddock v. Flood Co.,* 9th Dist. No. 23882, 2008–Ohio–112, at ¶ 7.

**{¶21}** Regarding promissory estoppel, "[t]he test ... is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Shetterly,* 2009–Ohio–673, at ¶ 6 (quoting *Kelly v. Georgia–Pacific Corp.,* 46 Ohio St.3d 134, 139, 545 N.E.2d 1244 (1989)). "This exception requires 'specific representations' rather than [g]eneral expressions of optimism or good will. Standing alone, praise with respect to job performance and discussion of future career

development will not modify the employment-at-will relationship." *Id.* (quoting *Craddock,* 2008–Ohio–112, at ¶ 8) (citations omitted)). "Whether a plaintiff proceeds under a theory of implied contract or promissory estoppel, ... specific representations leading to an expectation of continued employment are essential." *Craddock,* 2008–Ohio–112, at ¶ 8; *see Wing v. Anchor Media Ltd. of Texas,* 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph two of the syllabus (1991).

{¶22} Appellant, however, does not seem to make an argument as to breach of implied contract and/or promissory estoppel, arguing instead that Appellee had an "implied duty to not discharge [her] based upon a false claim of theft of drugs." (*See* Appellant's brief at 17). In support, Appellant seems to be arguing that the employee handbook's policy and procedures for progressive discipline created an assurance that her employment would continue in accordance with such terms. (Appellant's brief at 17-18).

{¶23} As a general rule in Ohio, employee handbooks do not constitute an employment contract. *Stembridge v. Summit Acad. Mgmt.,* 9th Dist. No. 23083, 2006–Ohio–4076, ¶ 27, citing *Rudy v. Loral Defense Sys.,* 85 Ohio App.3d 148, 152, 619 N.E.2d 449 (9th Dist.1993). The handbook is simply a unilateral statement of rules and policies creating no obligations or rights. *Tohline v. Cent. Trus. Co.,* 48 Ohio App.3d 280, 282, 549 N.E.2d 1223 (1st Dist.1988).

{¶24} The Ninth District Court of Appeals addressed the issue raised herein in *Stembridge v. Summit Acad. Mgt.,* supra:

An employment relationship is terminable at the will of either party unless expressly stated otherwise. (Citation omitted). *Henkel v. Educational*

*Research Council of Am.* (1976), 45 Ohio St.2d 249, 255, 344 N.E.2d 118. However, the employment at-will doctrine is the subject of two exceptions: (1) the existence of an implied or express contract which alters the terms of discharge; and (2) the existence of promissory estoppel where representations or promises were made to an employee. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 104, 483 N.E.2d 150. Appellant has argued that Aultman's employee handbook constitutes an exception to the employment-at-will doctrine.

Generally, employee handbooks do not constitute an employment contract. *Rudy v. Loral Defense Sys.* (1993), 85 Ohio App.3d 148, 152, 619 N.E.2d 449. This Court has previously held that " 'employee manuals and handbooks are usually insufficient, by themselves, to create a contractual obligation upon an employer.' " *Gargasz v. Nordson Corp.* (1991), 68 Ohio App.3d 149, 155, 587 N.E.2d 475, quoting *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 591 N.E.2d 752. Evidence of an employee handbook may be considered when deciding whether an implied contract exists, but its existence alone is not dispositive of the question. *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574–575, 653 N.E.2d 381.

In *Karnes v. Doctors Hospital* (1990), 51 Ohio St.3d 139, 141, 555 N.E.2d 280, the Ohio Supreme Court held that an employee handbook that expressly disclaimed any employment contract could not be characterized as an employment contract. This Court has also addressed disclaimers and

found that " '[a]bsent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook.'" *Westenbarger v. St. Thomas Med. Ctr.* (June 29, 1994), 9th Dist. No. 16119, at 7, quoting *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph one of the syllabus." *Id.* at paragraphs 26–28.

**{¶25}** In the case *sub judice*, we find Appellant was an at-will employee. Aultman's employee handbook, at page 15, contains an acknowledgement by the employee which states in pertinent part as follows:

The contents of this handbook are presented as a matter of information only and are subject to change. The plans, policies, and procedures described are not conditions of employment. Aultman Health Foundation reserves the right to modify, revoke, suspend, terminate, or change any or all such plans, policies, or procedures, in whole or in part, at any time with or without notice. The language in this handbook is not intended to create, nor is it to be construed to constitute, a contract between Aultman Health Foundation, or its affiliates, and any one or all of its employees. That is, employment can be terminated at any time at the will of either the employer or the employee ... I also acknowledge that this handbook is not a contract of employment and that either my employer or I may terminate my employment at any time, with or without cause, and with or without notice.

**{¶26}** The nature of the at-will employment is repeated again on page 14, wherein it states:

Aultman is an at-will employer. Just as an employee can terminate his or her employment with Aultman at any time, and for any or no reason; Aultman can terminate an employee at any time and for any or no reason. This policy of employment at-will means that the continued employment of any person is the option of Aultman.

**{¶27}** We find, based on the foregoing, that the trial court did not err in finding that appellant was an at-will employee, and that the trial court did not err in granting summary judgment in favor of Appellees on Appellant's implied contract claims.

**{¶28}** We further find that the trial court did not err in granting summary judgment to Appellees on Appellant's promissory estoppel claim. Upon our review of the record, we find no evidence that Appellees made any promises of continued employment to Appellant independent of the employee handbook. We note that Appellant, in her brief, does not argue that any such promises were made.

**{¶29}** Even if we were to find that the disciplinary procedures created an enforceable promise, there is no evidence of any breach thereof, because theft is expressly identified as an offense which may result in "immediate discharge".

**{¶30}** Page 51 of the employee handbook sets for the disciplinary guidelines and state, in pertinent part:

Any course of action or activity by an employee, even if it is not expressly forbidden by any policy, practice or rule, which interferes with the orderly operation of Aultman, the safety of its patients, visitors, customers,

employees or equipment, or is contrary to generally accepted standards of personal conduct or behavior, will be cause for disciplinary action which may include the employee's termination.

**{¶31}** The handbook then lists three groups of "types of actions" which "may result" in various outcomes. However, the handbook expressly states that this "list is not all-inclusive and is for guidance only." Theft is listed among the group of offenses that "may result" in "immediate discharge".

**{¶32}** Finally, Appellant has produced no evidence that she detrimentally relied on such a promise. Detrimental reliance does not exist where the promisee merely refrains from seeking other employment; she must reject a specific offer of employment to show detrimental reliance. *Stickler v. Keycorp,* 8th Dist. Cuyahoga No. 80727, 2003–Ohio–283, ¶ 27; *Onysko v. Cleveland Pub. Radio,* 8th Dist. Cuyahoga No. 76484, 2000 Ohio App. LEXIS 3368 (July 27, 2000), citing *Nilavar v. Osborn,* 127 Ohio App.3d 1, 17–18, 711 N.E.2d 726 (2d Dist.1998). Here, there is no evidence that Appellant rejected an offer of employment based on any alleged promise by Appellee.

**{¶33}** Based on the foregoing, we find the trial court properly granted summary judgment on Appellant's claims of implied contract and promissory estoppel.

**{¶34}** Appellant's first assignment of error is overruled.

## II.

**{¶35}** In her second assignment of error, Appellant argues the trial court erred in granting summary judgment on her defamation claims. We disagree.

{¶36} In the instant case, Appellant bases her defamation claims on: 1) Aultman's report to the State of Ohio Board of Nursing; and 2) Marie Hooper's statement to Jessica Starr.

{¶37} To establish a claim for defamation, a plaintiff must show: (1) a false statement of fact was made about the plaintiff; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a proximate result of the publication; and, (5) the defendant acted with the requisite degree of fault in publishing the statement. *Jamison v. Galena*, 2015-Ohio-2845, 38 N.E.3d 1176, ¶ 52 (5th Dist.) citing *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832. The requisite degree of fault the plaintiff must establish is dependent upon the classification of the defamation.

### *Report to the Ohio Board of Nursing*

{¶38} Appellant asserts that both Appellees made defamatory statements by making a report to the Nursing Board in connection with Appellant's termination for theft of narcotics.

{¶39} Upon review, we find that Appellant has again failed to produce competent evidence of any defamatory statement. The only evidence produced by Appellant consisted of the following excerpt of testimony by Appellee Hooper at Appellant's Unemployment Compensation Hearing:

Mr. Whitaker: My first question is this. I noticed that you put in your statement that you notified, that you believe that Ms. Johnson had stolen drugs and that you notified the Board of Nursing of that fact.

Ms. Hooper: Correct.

Q: And did you?

A: HR did.

**{¶40}** Appellant did not produce evidence of any written statement from Aultman to the Board of Nursing. She did not produce any evidence from the Board of Nursing itself. No clear testimony was produced as to what exactly was actually even reported to the Board of Nursing. As stated by the trial court in its Judgment Entry "there is no evidence of what was actually said, or even whether the communication was made verbally or in writing. Defendant Hooper herself did not notify the Board of Nursing; "HR" did, and there is no evidence from anyone in "HR" as to precisely what was communicated to the Board of Nursing." The trial court then found that without evidence of the actual statement, it could not "find that sufficient evidence exists that a defamatory statement was published to a third party. Moreover, even if proper evidence of a false statement had been produced, Defendants have demonstrated the existence of a qualified privilege and Plaintiff has produced no evidence to overcome it."

**{¶41}** This Court further finds that  R.C.§ 4723.34 imposes a mandatory reporting obligation upon Appellee Aultman Hospital, as follows:

A person or governmental entity that employs, or contracts directly or through another person or governmental entity for the provision of services by, registered nurses, licensed practical nurses, dialysis technicians, medication aides, or certified community health workers and that knows or has reason to believe that a current or former employee or person providing services under a contract who holds a license or certificate issued under this chapter engaged in conduct that would be grounds for

disciplinary action by the board of nursing under this chapter or rules adopted under it shall report to the board of nursing the name of such current or former employee or person providing services under a contract. The report shall be made on the person's or governmental entity's behalf by an individual licensed by the board who the person or governmental entity has designated to make such reports.

**{¶42}** R.C.§ 4723.341 further provides that in the absence of fraud or bad faith, "no person reporting to the board of nursing" with regard to matters under this chapter shall be subject to liability in damages in a civil action such as the instant case.

**{¶43}** We therefore find that, in the absence of any evidence of fraud or bad faith, Appellees are statutorily entitled to immunity from civil liability herein. Appellant herein has not produced any evidence of fraud or bad faith.

**{¶44}** Additionally, a publication is protected by a qualified privilege when the defendant making the communication is doing so under the performance of a public or private duty, or where the publisher and the recipient have a common interest. *Hahn v. Kotten (1975),* 43 Ohio St.2d 237, 243-244, 72 0.0.2d 134, 138,331 N.E.2d 713,718.

**{¶45}** Based on the existence of a mandatory reporting requirement as set forth above, Appellees had a qualified privilege to report Appellant's termination and the reason for same. Appellant herein would have to show actual malice to overcome the qualified privilege. *Id.*

**{¶46}** "Actual malice" requires clear and convincing evidence that a defendant published a statement with knowledge that it was false or with reckless disregard of its truth or falsity. *A & B-Abel/ Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades*

*Council,* 73 Ohio St.3d 1, 1995-0hio-66, 651 N.E.2d 1283 (1995). In order to demonstrate "reckless disregard", Appellant must produce "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."

**{¶47}** In the instant case, Appellant has not produced any evidence of reckless disregard by Appellees, nor any evidence from which reasonable minds could find any "actual malice" on the part of Appellees in connection with their report concerning Appellant's termination to the Board of Nursing.

**{¶48}** The trial court therefore did not err in finding that Appellees were entitled to judgment as a matter of law on this defamation claim.

*Statement to Jessica Starr*

**{¶49}** Appellant also alleges that Marie Hooper made a defamatory statement to Jessica Starr, a mutual friend.

**{¶50}** Upon review, Appellant has again failed to support this allegation with any competent or admissible evidence with regard to such statement.

**{¶51}** As found by the trial court :

> The record contains no evidence from Ms. Starr herself by way of affidavit, deposition, or other sworn statement, and no evidence or admission from Defendant Hooper as to any such statement. The sole "evidence" of any such statement is Plaintiff's statement that she (Plaintiff) was told by Ms. Starr that Ms. Hooper had said (to Ms. Starr) that Plaintiff had been stealing drugs and had filed a lawsuit.

**{¶52}** The trial court found that "[n]otwithstanding the purported truthfulness of any such statement, this "evidence" is unqualified hearsay" and therefore inadmissible pursuant to Civil Rule 56.

**{¶53}** We likewise find Appellant's statement as to what Ms. Starr said Mrs. Hooper allegedly said to her is not admissible under Rule 801 or Rule 56 and is insufficient to create a genuine issue of material fact.

**{¶54}** Additionally, in her deposition, Appellant admitted that she did not even know any of the details of the conversation between Hooper and Starr, stating:

**{¶55}** "I wasn't part of that conversation, so I don't know what Marie [Hooper] told Jessica specifically" and "I don't know the specifics of their conversation."

**{¶56}** Based on the lack of competent evidence of any defamatory statement, Appellant's defamation claim against Defendant Hooper also fails.

**{¶57}** Appellant's second assignment of error is overruled.

**{¶58}** For the foregoing reasons, the decision of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, John, P. J.
Baldwin, J., and
Wise, Earle E., J., concur.

JWW/d 0316