Margaret A. DEPRISCO,
Plaintiff–Appellant,

v.

DELTA AIR LINES, INC.,
Defendant–Appellee.

No. 02–5833.

United States Court of Appeals,
Sixth Circuit.

Jan. 16, 2004.

Randolph H. Freking, Kelly Mulloy Myers, Freking & Betz, Cincinnati, OH, for Plaintiff–Appellant.

David T. Croall, Porter, Wright, Morris & Arthur, Cincinnati, OH, for Defendant–Appellee.

Before COLE, CLAY, Circuit Judges; and QUIST, District Judge.*

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of

OPINION

QUIST, District Judge.

Plaintiff, Margaret DePrisco ("DePrisco"), sued her former employer, Delta Air Lines, Inc. ("Delta"), alleging claims of disability discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Ohio Civil Rights Act, O.R.C. § 4112 *et seq.* (" § 4112"); age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and § 4112; retaliation under Title VII, 42 U.S.C. § 2000e *et seq.;* breach of contract; promissory estoppel; and public policy wrongful discharge. The district court granted Delta's motion for summary judgment on all claims. The district court held that; (1) DePrisco was not disabled under the ADA; (2) Delta did not regard DePrisco as disabled; (3) Delta's enforcement of its employment requirements was not a pretext; (4) the younger employees DePrisco identified with regard to her age discrimination claim were not comparable; and (5) DePrisco failed to show that she was anything other than an at-will employee. DePrisco appeals the district court's order with respect to all claims.

## I.

DePrisco was born on November 22, 1946 and began working as a reservation sales agent for Delta in March of 1969. DePrisco continued to work for Delta as a reservation sales agent until October 2000, when Delta terminated her employment ostensibly for failing to meet Delta's performance requirements.

DePrisco's duties required her to work at a station consisting of a computer and telephone. DePrisco was primarily responsible for assisting customers in making flight reservations and answering their questions about flight schedules and fares.

Michigan, sitting by designation.

Because they are essentially tied to a telephone and a computer, reservation sales agents are required to sit for prolonged periods of time.

DePrisco generally received good job evaluations and performed her job in a satisfactory manner. In 1982, DePrisco was diagnosed with vertigo, which caused her to suffer dizzy spells and to faint at work on at least one occasion. Although DePrisco experiences symptoms of vertigo on a daily basis, she is able to control these symptoms by standing up and walking around. In spite of her vertigo, DePrisco was able to perform all of the essential functions of her job, except that she needed to take extra breaks to walk around to help alleviate the effects of her vertigo. However, these breaks adversely affected her time utilization—an important requirement for reservation sales agents. Delta measures efficient time utilization by an employee's "Smart Time" score. An employee's Smart Time score is calculated by comparing the amount of time an employee spends on the phone with customers with the amount of time spent away from customers. A Smart Time score of 95 is required, and a score below 95 may result in discipline or termination. DePrisco's Smart Time score was often below 95, and, consequently. DePrisco received written warnings about her time utilization on several occasions.

In 1986, 1990, and 1994, DePrisco submitted notes from her doctor. Joseph F. Daugherty III. M.D., to Delta, stating that DePrisco should be permitted to walk around for a brief period of time each hour due to her dizzy spells. Delta honored Dr. Daugherty's request by allowing DePrisco to take short breaks to walk around each hour, but Delta did not count the breaks toward the required eight-hour work day. Rather, DePrisco was required to make up

the extra break time at the end of her shift. From 1992 to 1994. DePrisco submitted letters to Delta from Dr. Daugherty stating that DePrisco should not work more than eight hours per day or 40 hours per week because she had been diagnosed with stress anxiety. According to Dr. Daugherty's August 12, 1993 letter, this restriction was to last for only two years. On May 14, 1998. DePrisco submitted a written request for an accommodation to Delta's Equal Opportunity Office requesting that she be allowed to take extra breaks at various lengths as in the past. Delta informed DePrisco that she would be permitted to take breaks as needed but advised her that she would be required to make up the time at the end of her shift. DePrisco also applied for the positions of In-flight Attendant, Crown Room Attendant, and Airport Customer Service Agent, which would have allowed her greater mobility. Delta did not offer these positions to DePrisco, although it considered her qualified for them. On December 29, 1998. DePrisco submitted a second accommodation request for the three jobs for which she had applied through the job bid process. Although the request was accompanied by a letter from Dr. Daugherty. Delta denied the request because it determined that the request was not medically supported and that DePrisco was able to perform her duties as a reservation sales agent with the original accommodation.

On or about June 13, 2000, DePrisco's supervisor placed DePrisco on probation due to her poor time utilization. DePrisco's supervisor acknowledged that DePrisco's time utilization was negatively affected only by the breaks she needed as an accommodation. On August 4, 2000. DePrisco's manager issued a letter to DePrisco warning her that her employment would be terminated if her time utilization remained unacceptable. In September 2000, Delta decided to terminate DePrisco's employment. On October 19, 2000, Delta told

DePrisco that she could choose to resign or retire. DePrisco chose to retire.

DePrisco filed her first charge of discrimination with the EEOC on July 9, 1998. DePrisco alleged that Delta's requirement that DePrisco meet the same time utilization standards as other employees was discriminatory. On October 13, 1998, DePrisco filed a second charge of discrimination alleging that she received an "unacceptable" rating for time utilization in retaliation for her filing of the previous charge. DePrisco filed a third charge of discrimination on April 12, 1999, alleging that Delta retaliated against her for filing the second charge when it refused to transfer her to a different department and position. DePrisco filed her complaint in this case on September 3, 1999. In March 2001, DePrisco amended her complaint to add additional claims based upon the termination of her employment.

## II.

This court reviews a district court's grant of summary judgment de novo, using the same standard employed by the district court. *See Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997). "Summary judgment is proper if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *City of Wyandotte v. Consol. Rail Corp.,* 262 F.3d 581, 585 (6th Cir.2001). "We consider all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *Id.*

### A. Disability Discrimination Claims

DePrisco alleged that Delta discriminated against her on the basis of her disability both by failing to provide a reasonable accommodation and by treating (terminating) her differently than similar-

ly-situated non-disabled employees. The district court concluded that DePrisco is not disabled because she is not substantially limited in any major life activity, because she does not have a record of impairment, and because Delta did not regard her as disabled.

The ADA defines a "qualified individual with a disability" as

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this title, consideration shall be given to the employer's judgment as to what functions of a job are essential. . . .

42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(m) (defining "qualified individual" as "individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position . . . and who, with or without reasonable accommodation, can perform the essential functions of such position"). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual: (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An impairment "substantially limits" a major life activity if the plaintiff is "[u]nable to perform a major life activity that the average person in the general population can perform." or the plaintiff is "significantly restricted as to the condition, manner or duration under which [he or she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can per-

form that same major life activity." 29 C.F.R. § 1630(j)(1). Factors to be considered in determining whether a plaintiff is substantially limited in a major life activity are: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact of the impairment. 29 C.F.R. § 1630(j)(2).

In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), the Supreme Court held "that to be substantially limited in [a major life activity], an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Id.* at 198, 122 S.Ct. at 691. The Court also held that a substantial limitation must apply to "the variety of tasks central to most people's daily lives," not merely to a sub-class of that activity. *Id.* at 200, 122 S.Ct. at 692–93. In addition, the Court observed that a medical diagnosis, alone, is insufficient to demonstrate that an individual has a disability within the meaning of the ADA where the impairment is one whose symptoms vary widely between individuals. *Id.* at 199, 122 S.Ct. at 692.

The district court concluded that DePrisco was not disabled under *Toyota* because DePrisco was limited in her ability to perform only one kind of job where she had to sit without interruption for several hours a day with minimal breaks. In addition, the district court noted that DePrisco was not prevented from doing other jobs where she could walk around more and, in fact, was qualified to do several other jobs such as flight or Crown Room attendant.

 We agree with the district court. The fact that DePrisco needs to walk around for a brief time every hour is not a

substantial limitation on her ability to work. As the district court observed. DePrisco was able to perform several other jobs without an accommodation. In addition, she was not limited in other major life activities, such as sitting or standing. *See Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.*, 242 F.3d 610, 615 (5th Cir.2001) (stating that the plaintiff's ability to sit or stand in one place for up to an hour at a time before having to walk around demonstrated that the plaintiff's ability to sit or stand was not significantly restricted as compared to the average person); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir.1998) (concluding that a police officer, who testified that he could not sit for long periods of time without getting up to stretch, was not substantially impaired because the evidence did not show that the officer was " 'substantially' impaired in his ability to stand, sit, lift, bend, or reach as compared with the average person"). Also, DePrisco failed to show that she has a record of disability because she must still show that the impairment substantially limits a major life activity. *See Dupre*, 242 F.3d at 615. Finally, the district court correctly found that there was no evidence that Delta regarded DePrisco as having a more severe impairment than she actually had. Delta regarded DePrisco only as being unable to sit for long periods without taking short breaks each hour.

## B. Age Discrimination Claims

To establish a claim for age discrimination, a plaintiff must show that: (1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position from which she was terminated; and (4) she was either replaced by a person from outside the protected class or was treated differently than a similarly situated employee from outside the protected class. *Hein v. All Am. Plywood Co.*, 232 F.3d

482, 489 (6th Cir.2000). With regard to DePrisco's age discrimination claims, the district court concluded that summary judgment was proper because the younger employees with whom DePrisco sought to compare herself were not similarly situated and because there was no showing that Delta's stringent time standards were a pretext for discrimination.

The district court was correct in concluding that the younger employees cited by DePrisco were not comparable. Sutton, one of the comparators, had time utilization problems from March 1997 to September 1998—over a year before Delta began using the Smart Time system. Sutton was counseled about her problem and was not terminated. After the adoption of the Smart Time system. Sutton consistently scored above 95, although on a few occasions she was one point below satisfactory. Nayar, another comparator had an average score of 93 during the period of January 2000 to September 2000. After he was placed on probation, his score jumped up to 96—one point above satisfactory. Fisher–Beasley, the third comparator, had an average time utilization score of 93 during the period of February 2000 to December 2000. Her scores were in the satisfactory range during two of these nine months. In contrast, DePrisco had an average time utilization score of 88 during the period from November 1999 to September 2000, and never got her score into the satisfactory range.

## C. Retaliation Claims

To establish a prima facie case of unlawful retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that the defendant knew she engaged in the protected activity; (3) that the defendant subsequently took an employment action adverse to her; and (4) a causal connection between the protected activity and

the adverse employment action exists. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000). The district court did not specifically address the retaliation claim, although its statement that DePrisco failed to show that Delta's strict time utilization standards and its enforcement of those standards were pretextual indicates its reason for denying that claim.

■ DePrisco failed to introduce evidence of a causal connection between the protected activity (her EEOC charges) and the adverse employment action (her termination), and DePrisco has not shown that Delta's reason for her termination was a pretext for discrimination. DePrisco's time utilization was a problem long before DePrisco had engaged in any protected conduct, and there is no basis for concluding that Delta's actions against DePrisco in that regard following the protected activity were retaliation for engaging in the protected activity.

## D. Breach of Contract and Promissory Estoppel Claims

■ The district court concluded that summary judgment was proper on DePrisco's breach of contract and promissory estoppel claims because clear provisions in Delta's employee handbook established that DePrisco's employment was at-will. DePrisco argues that statements in her employment application and Delta's Human Resources Practices Manual ("HRPM") create a "binding agreement." However, statements in both the application and the HRPM show that DePrisco's employment was at-will and that Delta reserved the right to amend or modify the terms and conditions of employment at any time or for any reason. These statements show that Delta had the right to terminate DePrisco at any time and for any reason.

The same reasons support dismissal of DePrisco's promissory estoppel claim because DePrisco is unable to show that Delta made a specific promise of job security, as required for a promissory estoppel claim. *See Rudy v. Loral Defense Systems,* 85 Ohio App.3d 148, 154, 619 N.E.2d 449 (1993). Moreover, DePrisco admitted that she was aware that her employment was at-will.

## E. Violation of Ohio Public Policy Claim

■ The district court did not specifically address the violation of Ohio public policy claim, but it is clear from the opinion that the district court considered that claim subject to dismissal for the same reasons the age and disability discrimination claims were dismissed. We hold that DePrisco's public policy claim fails for the reason that DePrisco cannot establish any type of discrimination. *See Asp v. Ohio Med. Transp., Inc.,* No. 98AP–1063, 1999 WL 430713, at \*7, 1999 Ohio App. LEXIS 2991, at \*20 (Ohio Ct.App. June 29, 1999).

## III.

Summary Judgment for Delta on all of DePrisco's claims was proper. Therefore, the district court's judgment is AFFIRMED in all respects.