<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0132n.06

Case Nos. 18-3801

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 19, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CAROL MESSENHEIMER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| COASTAL PET PRODUCTS, INC., | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Carol Messenheimer sued Coastal Pet Products ("Coastal") after they demoted her. She claimed Coastal did so because of a disability. The district court granted summary judgment for Coastal, and we affirm.

I.

Coastal makes leashes, collars, and other pet-related accessories. After working as an associate in Coastal's factory for twenty-five years, Carol Messenheimer earned a promotion to supervisor. Apparently, things initially went well. But a few years after her promotion, sometime in 2008 or 2009, Messenheimer was diagnosed with Meniere's disease, an inner-ear disorder that can cause vertigo and hearing loss. She took medication to handle her symptoms, but she did not tell Coastal about her condition at the time of her diagnosis.

Meanwhile, Messenheimer's supervisory style began to cause issues at Coastal, and the issues would not stop. From 2009 until her demotion in 2014, Messenheimer received a number of warnings from Coastal's management—both formal and informal—about her rude behavior toward subordinates. At least five subordinates either left the company or asked for a transfer because of Messenheimer. And for a period of time, management discussed these issues with Messenheimer on a weekly basis to try and fix them—but to no avail. After a transfer to a different department seemed, at first, to fix her negativity toward subordinates, Messenheimer started receiving complaints again. It was during this period that Messenheimer took medical leave for her Meniere's disease for the first time.

After working with Messenheimer for years to improve her behavior toward subordinates, Barbara Perkins, Messenheimer's direct supervisor, and Eric Gordon, another Coastal higher-up, decided to demote her. The very next day Perkins and Gordon decided to tell Messenheimer of their decision, but before they could, Messenheimer suffered an episode of Meniere's disease (vomiting, vertigo, and dizziness) and was rushed to the hospital. Following this episode, she took medical leave a second time. When she returned a week and a half later, she was demoted. Believing she was demoted because of her Meniere's disease, Messenheimer sued, alleging that Coastal violated the Americans with Disabilities Act (ADA) and a similar Ohio law. 42 U.S.C. §§ 12112, 12203; Ohio Rev. Code Ann. § 4112.02. The district court granted summary judgment for Coastal, and we review de novo. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 301 (6th Cir. 2016).

## II.

Messenheimer has made three specific claims against Coastal. First, she argues that Coastal discriminated against her by demoting her because of her disability—Meniere's disease.

To survive summary judgment, Messenheimer must, at the very least, make out a prima facie case of discrimination. *Cf. E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). She must prove (1) she has a disability, (2) she was qualified for her position, with or without reasonable accommodation, (3) she suffered an adverse employment decision, (4) her employer knew or had reason to know she had a disability, and (5) her position remained open while her employer sought a replacement. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016); *see Manigan v. Sw. Ohio Reg'l Transit Auth.*, 385 F. App'x 472, 478 (6th Cir. 2010) (citing *Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206–07 (Ohio 1998)) (analyzing Ohio disability discrimination claims together with ADA claims).

Even assuming Messenheimer could make out the other elements of a prima facie case, she is unable to show Coastal knew or had reason to know she was disabled. To meet this element, Messenheimer must demonstrate that "the individual decisionmaker[s] responsible for [her] demotion ha[d] knowledge of [her] disability." *Tennial*, 840 F.3d at 306. Messenheimer, however, has not shown that either of the people who demoted her—Gordon or Perkins—knew of her Meniere's disease before her demotion. And both Gordon and Perkins testified that Messenheimer never told them about her Meniere's diagnosis despite the numerous times they met to discuss her management style. Messenheimer has pointed to nothing in the record to contradict Gordon's and Perkins's statements. In fact, the evidence Messenheimer does point to is not related to Gordon's or Perkins's knowledge at all. For instance, Messenheimer suggests that HR representatives at Coastal knew of her Meniere's disease. But Messenheimer readily admits she told these HR representatives of her Meniere's disease during an HR investigation that she requested *after* she was demoted. What these HR representatives knew after Messenheimer's demotion is not evidence of what Gordon and Perkins knew *before* her demotion. *See id*. And while a prescription

note about Meniere's disease was found in Messenheimer's HR folder during Coastal's investigation, nothing in the record suggests that Gordon and Perkins were aware of that note. Messenheimer has not offered any evidence regarding when she gave the note to Coastal or even to whom. Thus, the note does little to prove Gordon's or Perkins's specific knowledge.

Lacking much evidence, Messenheimer contends that Gordon and Perkins still must have known about her disability given the circumstances: (1) she had been sick at work before and taken leave, and (2) they demoted her after her second Meniere's-related medical leave. It is true that Perkins knew Messenheimer suffered from bouts of vertigo. But a general awareness of some symptoms is not enough to show that Perkins (or Gordon) knew of Messenheimer's disability. *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 366, 369 (6th Cir. 2013) (holding that an employer did not have knowledge of an employee's disability despite knowing that the employee took medical leave for an upper respiratory infection, dizziness, and headaches); *accord Tennial*, 840 F.3d at 306; *see Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) ("An employer has notice of the employee's disability when the employee tells the employer that he is disabled."); *DePrisco v. Delta Air Lines, Inc.*, 90 F. App'x 790, 793–94 (6th Cir. 2004) (stating that in the plaintiff's circumstances, vertigo was not a disability for purposes of the ADA). Nor is knowledge that Messenheimer took leave sufficient to show Gordon's or Perkins's awareness of her disability. *Tennial*, 840 F.3d at 306. And the timing of her second medical leave does not make a difference in this case. While it is true that Messenheimer was demoted after she returned from her second medical leave, Gordon and Perkins's decision to demote her came before her leave. Thus, her second medical leave did not play a role in what Gordon and Perkins knew about Messenheimer's disability when they decided to demote her. In sum, the record lacks any

evidence—direct or circumstantial—that Gordon and Perkins were aware of Messenheimer's disability. Accordingly, she cannot make out a prima facie case for her discrimination claim.

Supposing Messenheimer could have shown a prima facie case of discrimination, her claim still falls short under the burden-shifting framework used to evaluate ADA discrimination claims. *See Ferrari*, 826 F.3d at 891–92 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Coastal has offered a legitimate, nondiscriminatory reason to demote Messenheimer, namely her poor demeanor toward the employees she supervised. As a consequence, to survive summary judgment, Messenheimer would have to raise a genuine issue of material fact as to whether Coastal's proffered reason was just pretext for discriminating against her because of her disability. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (holding a plaintiff can show pretext when the "proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the [adverse employment decision]"). Yet after reviewing the record and the briefing, we agree with the district court that Messenheimer cannot show pretext. Coastal's decision to demote Messenheimer is extensively supported by testimony and documentation going back years. For instance, an Employee Warning Report on file with Coastal shows that five of Messenheimer's subordinates left Coastal or asked for a transfer because of her "rude and negative" behavior towards them. R. 34-5, Pg. ID 205. Messenheimer has not called this or any of the other evidence into doubt. Moreover, to the extent Messenheimer argues that the timing of Coastal's decision to demote her should be sufficient to raise an inference of pretext—it is not. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) ("[T]emporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence."). As a result, Messenheimer's discrimination claim fails nonetheless.

Messenheimer's other two claims fare no better. In her second claim, Messenheimer argues that Coastal retaliated against her. But she failed to address this claim below in her response to Coastal's motion for summary judgment, so it is "deemed to have [been] abandoned." *Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015). And, in any event, proving ADA retaliation requires that Messenheimer specify the protected activity that Coastal retaliated against. *Rorrer v. City of Stow*, 743 F.3d 1025, 1047 (6th Cir. 2014). But Messenheimer has offered only her contention that Coastal retaliated against her after she "complained internally." R.1, Pg. ID 5. Such a bare assertion is not enough to survive summary judgment; specific facts are required. Fed. R. Civ. P. 56(c), (e).

In her last claim, Messenheimer argued before the district court that Coastal failed to accommodate her disability. *See* 42 U.S.C. § 12112. But since she did not brief this issue on appeal, she has waived it. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005), *abrogated on other grounds as recognized by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015).

We affirm.